# MICHIGAN CENTRAL RAILROAD COMPANY *v.* VREELAND.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF OHIO.

No. 242.   Argued December 4, 1912.—Decided January 20, 1913.

If the constitutional questions on which the writ of error was based were not foreclosed when the writ was sued out, this court retains jurisdiction to consider other assignments of error even if the constitutional questions have meanwhile been decided in other cases adversely to plaintiff in error.

The Employers' Liability Act of 1908 will not receive such a narrow interpretation as to defeat all liability because the injured employé survived the injury for a brief period.

Congress has always had power under the commerce clause of the Constitution to regulate the liability of interstate carriers to their employés for injuries; but until it did act, the subject was within the police power of the States. Since the passage of the Employers' Liability Act of 1908, that act is paramount and exclusive and so remains unless and until Congress shall again remit the subject to the States. *Reid* v. *Colorado,* 187 U. S. 137.

A Federal statute upon a subject exclusively under Federal control must be construed by itself and cannot be pieced out by state legislation. If a liability does not exist under the Employers' Liability Act of 1908, it does not exist by virtue of any state legislation on the same subject.

At common law the right of action for an injury to the person is extinguished by the death of the party injured whether death be instantaneous or not. As the Employers' Liability Act of 1908 did not provide for any such survival the right was extinguished by death.

At common law loss and damage may accrue and a right of action accrue to persons dependent upon one wrongfully injured; but this cause of action, except for loss of services prior to death, abates at the death.

The evident purpose, however, of Congress, in enacting the Employers' Liability Act of 1908 was to save a right of action to certain relatives dependent upon the employé wrongfully injured for the loss and financial damage resulting from his death, and there is no express or implied limitation of the liability to cases in which death was instantaneous.

This liability is for pecuniary damage only, and the statute should be construed in this respect as Lord Campbell's Act has been construed,

not as granting a continuance of the right the injured employé had, but as granting a new and independent cause of action.

The pecuniary loss recoverable under the Employers' Liability Act of 1908 by one dependent upon the employé wrongfully killed must be a loss which can be measured by some standard, and does not include an inestimable loss such as that of society and companionship of the deceased or of care and advice in case of a husband for his wife.

There is no hard and fast rule by which pecuniary damages may be measured in all cases.

A minor child sustains a loss from the death of a parent of a different kind from that of wife or husband from the death of the spouse; while the former is capable of definite valuation the latter is not.

In this case the judgment under the Employers' Liability Act of 1908, of damages for death of a husband who survived the injury for a brief period, is reversed, because, although the wife was entitled to maintain the action notwithstanding the death was not instantaneous, the damages were not properly estimated as the court charged the jury that they could consider the relation of husband and wife and the care and advice of the former to the latter.

THE facts are stated in the opinion.

Mr. Emery D. Potter, with whom Mr. Frank E. Robson, Mr. Henry Russel and Mr. Charles P. Carroll were on the brief, for plaintiff in error:

The decision in Mondou v. Railroad Company, 223 U. S. 1, did not deprive this court of its jurisdiction to pass upon other material and substantial questions raised on this record, its jurisdiction having once rightfully vested.

For construction of the act of April 22, 1908, 35 Stat. 65; and the act of April 5, 1910, 36 Stat. 291, see Adams v. Nor. Pac. R. R., 116 Fed. Rep. 324; Alder v. Fleming, 159 Fed. Rep. 593; American R. R. Co. v. Birch, 224 U. S. 547; City v. Marfield, 63 Kansas, 794; Dolson v. L. S. & M. S. Ry., 128 Michigan, 444; Ely v. Detroit United Ry. Co., 162 Michigan, 287; Holton v. Dailey, 106 Illinois, 131; Jones v. McMillan, 129 Michigan, 86; Kellow v. Central Iowa Ry. Co., 68 Iowa, 470; Mulcahey v. Washburn Car Co., 145 Massachusetts, 281; Nor. Pac. R. R. v. Adams, 192 U. S. 440, 450; Nourse v. Packard, 138 Massachusetts,

307; *Oliver* v. *Street Ry. Co.*, 134 Michigan, 367; *Railway Co.* v. *Clark*, 152 U. S. 230; *Railway Co.* v. *Dawson*, 68 Arkansas, 1; *Railway Co.* v. *Dixon*, 179 U. S. 131; *Roundtree* v. *Adams Exp. Co.*, 165 Fed. Rep. 156; *Sawyer* v. *Perry*, 88 Maine, 42; *State* v. *Grand Trunk R. R. Co.*, 61 Maine, 144; *Storrie* v. *Grand Trunk Elevator Co.*, 134 Michigan, 297; *Sweetland* v. *R. R. Co.*, 117 Michigan, 329; *West* v. *Detroit United Ry. Co.*, 159 Michigan, 269; see also Michigan Survival Act, p. 16 and Michigan Death Act, p. 17.

There was error in the charge of the court to the jury as to the measure of damages. *Davis* v. *Guarnieri*, 45 Oh. St. 471; *Gas Co.* v. *Rogers*, 135 S. W. Rep. 904; *Holton* v. *Dailey*, 106 Illinois, 132; *May* v. *R. R. Co.*, 62 N. J. L. 63; *McHugh* v. *Schlosser*, 159 Pa. St. 480; *Nelson* v. *R. R.*, 140 Michigan, 582; *Railroad Co.* v. *Bentz*, 108 Tennessee, 670; *Railroad Co.* v. *Johnson*, 78 Texas, 536; *Railroad Co.* v. *Walker*, 125 S. W. Rep. 99; *Railroad Co.* v. *Wilson*, 48 Fed. Rep. 57; *Railway Co.* v. *Altemeier*, 60 Oh. St. 10; *Railway Co.* v. *Austin*, 68 Illinois, 126; *Railway Co.* v. *Golway*, 6 App. D. C. 144; *Railway Co.* v. *Townsend*, 69 Arkansas, 380; *Steel* v. *Kurtz*, 28 Oh. St. 191; *Sternfelds* v. *Railway Co.*, 73 N. Y. App. Div. 494; *Swift & Co.* v. *Johnson*, 138 Fed. Rep. 867; *Walker* v. *R. R. Co.*, 111 Michigan, 518; Webster's Int. Dict. 1895, see "care," "advice."

*Mr. John B. Daish*, with whom *Mr. Joseph D. Sullivan* was on the brief, for defendant in error.

The constitutional questions were abandoned by the defendant below at the trial of the case, have since been abandoned in its brief on the motion to dismiss or affirm, and pending hearing of the case have been decided adversely to the contentions of the railroad company.

Assuming that all the questions raised by the assignments of error are properly before and can be considered by this court, they will be found upon examination to be without merit.

Unless the provisions of the particular statutes are distinctly and clearly to the contrary, it is the rule of the Federal and many state courts that so long as the death of the injured party is occasioned by acts within the statute, it is immaterial whether or not the death and injury are simultaneous. *Roach* v. *Imperial Min. Co.*, 7 Fed. Rep. 698; *Roach* v. *Cons. Imp. M. Co.*, 7 Sawy. 224, construing Nevada law; *Matz* v. *Chicago &c. R. Co.*, 85 Fed. Rep. 180, construing Missouri law; *Sternenberg* v. *Mailhos* (C. C. A.), 99 Fed. Rep. 43, construing Texas law; *St. Louis &c. R. Co.* v. *Dawson*, 68 Arkansas, 1; *Murphy* v. *N. Y. &c. R. Co.*, 38 Connecticut, 184; *Mallot* v. *Shimer*, 153 Indiana, 35, construing Illinois law; *Conners* v. *Burlington &c. R. Co.*, 71 Iowa, 490; *Warden* v. *Humeston &c. R. Co.*, 72 Iowa, 201; *Brown* v. *Buffalo &c. R. Co.*, 22 N. Y. 191; *Perham* v. *Portland Elec. Co.*, 33 Oregon, 451; *Internat'l &c. R. Co.* v. *Kindred*, 57 Texas, 491; *Boyden* v. *Fetchbury, &c. R. Co.*, 70 Vermont, 125; *Van Amberg* v. *Vicksburg &c. R. Co.*, 37 La. Ann. 651; *Hamilton* v. *Morgan's L. &c. R. Co.*, 42 La. Ann. 824; *Legg* v. *Britton*, 64 Vermont, 652.

Of course, where States have so-called "survival acts" and a statute creating a new cause of action (as in Michigan) it would appear to be a salutary rule that an administrator can recover damages under the latter statute only if death is instantaneous, and if the death is not instantaneous he can recover under the former statute. *Sweetland* v. *Chicago &c. R. Co.*, 117 Michigan, 329; *Dolson* v. *Lake Shore &c. R. Co.*, 128 Michigan, 444; *Kyes* v. *Valley Telephone Co.*, 132 Michigan, 281; *Oliver* v. *Houghton S. R. Co.*, 134 Michigan, 367. Such statutes are clearly distinguishable from the one under consideration; also such statutes as exist in Maine (*Sawyer* v. *Perry*, 88 Maine, 42). In truth, the rule in Michigan and Maine seems to be and justifiably is (by reason of the language of the acts) at variance with the rule elsewhere.

To read into this act (and it is necessary so to do to sus-

tain the propositions in the second and third assignments of error) the word "instantaneous" or "immediate" death would change the plain and unambiguous words of the statute and nullify the beneficent purposes for which it was enacted by the Congress.

There was no error in the instruction that in assessing the pecuniary damages which the widow sustained the jury might consider the relation that was sustained by husband and wife, and draw upon their experience as men, what it would have reasonably been worth to the wife in dollars and cents, to have had during their life together, had he lived, the care and advice of her husband. *Nor. Pac. R. R. Co.* v. *Freeman*, 83 Fed. Rep. 82; *Felt* v. *Puget Sound Co.*, 175 Fed. Rep. 177; *Bollinger* v. *St. Paul & Duluth R. R. Co.*, 35 Minnesota, 418; *Chattanooga R. R. Co.* v. *Clowdis* (Ga.), 17 S. E. Rep. 88; *Mo. Pac. R. Co.* v. *Bond*, 2 Tex. Civ. App. 104.

As to children whose parents are killed, see *Tilley* v. *P. R. R. Co.*, 29 N. Y. 252; *St. Louis &c. R. Co.* v. *Haddry*, 57 Arkansas, 306; *Stoher* v. *St. L., I. M. & S. Ry. Co.*, 91 Missouri, 509; *Walker* v. *McNiell*, 17 Washington, 582.

If the care and guidance and advice of the father is of pecuniary value to the children, likewise is the care and advice of the husband of value to his wife.

MR. JUSTICE LURTON delivered the opinion of the court.

This was an action under the Employers' Liability Act of April 22, 1908, to recover damages for the wrongful death of the intestate, an employé in the service of the railroad company. The constitutionality of the act was drawn in question by the plaintiff in error in the court below and this afforded ground for bringing the case directly to this court. Since the allowance of the writ of error all of the constitutional questions have been decided adversely to the plaintiff in error. *Mondou* v. *Railroad Company*, 223 U. S. 1. But this does not justify

our dismissing the case, since the constitutional questions
which gave the right to bring it here were not foreclosed
when the writ was allowed, and we, therefore, have juris-
diction to consider other assignments of error.

These relate to the construction of the act and the
measure of damages thereunder. Sections 1 and 2 of
the act of April 22, 1908, 35 Stat. 65, c. 149, and § 2 of
the amendatory act of April 5, 1910, 36 Stat. 291, c. 143,
are set out in the margin.[1]

---

[1] SEC. 1. That every common carrier by railroad while engaging in
commerce between any of the several States or Territories, or between
any of the States and Territories, or between the District of Columbia
and any of the States or Territories, or between the District of Colum-
bia or any of the States or Territories and any foreign nation or nations,
shall be liable in damages to any person suffering injury while he is
employed by such carrier in such commerce, or, in case of the death of
such employé, to his or her personal representative, for the benefit of
the surviving widow or husband and children of such employé; and, if
none, then of such employé's parents; and, if none, then of the next of
kin dependent upon such employé, for such injury or death resulting
in whole or in part from the negligence of any of the officers, agents, or
employés of such carrier, or by reason of any defect or insufficiency,
due to its negligence, in its cars, engines, appliances, machinery, track,
roadbed, works, boats, wharves, or other equipment.

SEC. 2. That every common carrier by railroad in the Territories,
the District of Columbia, the Panama Canal Zone, or other possessions
of the United States shall be liable in damages to any person suffering
injury while he is employed by such carrier in any of said jurisdictions,
or, in case of the death of such employé, to his or her personal represent-
ative, for the benefit of the surviving widow or husband and children
of such employé; and, if none, then of such employé's parents; and, if
none, then of the next of kin dependent upon such employé, for such
injury or death resulting in whole or in part from the negligence of any
of the officers, agents, or employés of such carrier, or by reason of any
defect or insufficiency, due to its negligence, in its cars, engines, ap-
pliances, machinery, track, roadbed, works, boats, wharves, or other
equipment.

Section 2 of the Act of April 5, 1910:

That said Act be further amended by adding the following section as
section nine of said Act:

This case, however, involves only a construction of the act prior to the amendment referred to.

The decedent survived his injuries for several hours. His personal representative has brought this action not for the injury suffered by his intestate, but for the loss suffered by his widow as a consequence of his wrongful death.

For the railroad company it has been argued that the fact that the injured employé survived his injuries for several hours operates to extinguish its liability for both the wrongful injury and the death which ensued. The view of counsel seems to be that the act declared a single liability and constituted a cause of action in behalf of the injured person if he survived, or, in case his death was instantaneous, a cause of action for the benefit of the specified dependent relatives surviving. This is a narrow interpretation of the act and would operate to defeat all liability unless the injured person should survive long enough to conduct his action to a recovery.

We think the act declares two distinct and independent liabilities, resting, of course, upon the common foundation of a wrongful injury, but based upon altogether different principles. It plainly declares the liability of the carrier to its injured servant. If he had survived he might have recovered such damages as would have compensated him for his expense, loss of time, suffering and diminished earning power. But if he does not live to recover upon his own cause of action, what then? Does any right of action survive his death and pass to his representative? This is a question which depends upon the statute.

---

Sec. 9. That any right of action given by this Act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé, and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, but in such cases there shall be only one recovery for the same injury.

We may not piece out this act of Congress by resorting to the local statutes of the State of procedure or that of the injury. The act is one which relates to the liability of railroad companies engaged in interstate commerce to their employés while engaged in such commerce. The power of Congress to deal with the subject comes from its power to regulate commerce between the States.

Prior to this act Congress had not deemed it expedient to legislate upon the subject, though its power was ample. "The subject," as observed by this court in *Mondou* v. *Railroad Co.*, 223 U. S. 1, 54, "is one which falls within the police power of the State in the absence of legislation by Congress." *Nashville, C. & St. L. Ry. Co.* v. *Alabama*, 128 U. S. 96, 99. By this act Congress has undertaken to cover the subject of the liability of railroad companies to their employés injured while engaged in interstate commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the States. Thus, in *Gulf, Colorado & Santa Fe Ry.* v. *Hefley*, 158 U. S. 98, 104, it was said, in reference to state legislation touching freight rates upon interstate freight which conflicted with the legislation of Congress upon the same subject, that:

"Generally it may be said in respect to laws of this character that, though resting upon the police power of the State, they must yield whenever Congress, in the exercise of the powers granted to it, legislates upon the precise subject-matter, for that power, like all other reserved powers of the States, is subordinate to those in terms conferred by the Constitution upon the Nation. 'No urgency for its use can authorize a State to exercise it in regard to a subject-matter which has been confided exclusively to the discretion of Congress by the Constitution.' *Henderson* v. *New York*, 92 U. S. 259, 271. 'Definitions of the police power must, however, be taken, subject to the condition that the State cannot, in its exercise,

for any purpose whatever, encroach upon the powers of the general government, or rights granted or secured by the supreme law of the land.' *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 661. 'While it may be a police power in the sense that all provisions for the health, comfort, and security of the citizens are police regulations, and an exercise of the police power, it has been said more than once in this court that, where such powers are so exercised as to come within the domain of Federal authority as defined by the Constitution, the latter must prevail.' *Morgan* v. *Louisiana,* 118 U. S. 455, 464."

It therefore follows that in respect of state legislation prescribing the liability of such carriers for injuries to their employés while engaged in interstate commerce this act is paramount and exclusive, and must remain so until Congress shall again remit the subject to the reserved police power of the States. *Reid* v. *Colorado,* 187 U. S. 137, 146.

The statutes of many of the States expressly provide for the survival of the right of action which the injured person might have prosecuted if he had survived. But unless this Federal statute which declares the liability here asserted provides that the right of action shall survive the death of the injured employé, it does not pass to his representative, notwithstanding state legislation. The question of survival is not one of procedure, "but one which depends on the substance of the cause of action." *Schreiber* v. *Sharpless*, 110 U. S. 76, 80; *Martin* v. *Baltimore & Ohio R. R. Co.*, 151 U. S. 673.

Nothing is better settled than that at common law the right of action for an injury to the person is extinguished by the death of the party injured. The rule "*Actio personalis moritur cum persona*" applies, whether the death from the injury be instantaneous or not. The act of 1908 does not provide for any survival of the right of action created in

behalf of an injured employé. That right of action was therefore extinguished. The act has been many times so construed by the Circuit Courts. We cite a few of the cases: *Fulgham* v. *Railway*, 167 Fed. Rep. 660; *Walsh* v. *Railroad*, 173 Fed. Rep. 494.

At common law loss and damage may, in some cases, accrue to persons dependent upon one wrongfully injured and a right of action in some cases arises in their behalf. But this cause of action, except for loss of personal services, before the death, abates at the death.

In *Baker* v. *Bolton*, 1 Campbell, 493, Lord Ellenborough ruled that "in a civil court, the death of a human being could not be complained of as an injury." *Mobile Life Ins. Co.* v. *Brame*, 95 U. S. 754, 756; *The Harrisburg*, 119 U. S. 199, 204.

The obvious purpose of Congress was to save a right of action to certain relatives dependent upon an employé wrongfully injured, for the loss and damage resulting to them financially by reason of the wrongful death. Thus, after declaring the liability of the employer to the injured servant, it adds,—"or in case of the death of such employé, to his or her personal representatives, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death," etc. There is no express or implied limitation of the liability to cases in which the death was instantaneous.

This cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had,— one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them and for that only.

The statute in giving an action for the benefit of certain members of the family of the decedent is essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being, that of 9 and 10 Victoria, known as Lord Campbell's Act. This act has been, in its distinguishing features, reënacted in many of the States, and both in the courts of the States and of England has been construed not as operating as a continuance of any right of action which the injured person would have had but for his death, but as a new or independent cause of action for the purpose of compensating certain dependent members of the family for the deprivation, pecuniarily, resulting to them from his wrongful death. For convenience in comparing Lord Campbell's Act with the act of Congress of 1908, the first and second sections of the former are set out in the margin.[1]

In one of the earliest cases which arose under the act, Coleridge, J., said:

"It will be evident that this act does not transfer this right of action to his representative, but gives to the representative a totally new right of action, on different principles." *Blake* v. *Midland Ry. Co.*, 18 Q. B. 93, 109.

In *Seward* v. *The Vera Cruz*, 10 App. Cases, 59, Lord Blackburn said:

---

[1] Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding such death, etc.

The second section provides that,—

Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought.

"A totally new action is given against the person who would have been responsible to the deceased if the deceased had lived; an action which . . . is new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child, who under such circumstances suffers pecuniary loss."

But as the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent immediately before his death to have maintained an action for his wrongful injury. Tiffany, Death by Wrongful Act, § 124; *Louisville, E. & St. L. R. R. Co.* v. *Clark*, 152 U. S. 230; *Read* v. *G. E. Ry.*, L. R. 3 Q. B. 555; *Hecht* v. *O. & M. Ry.*, 132 Indiana, 507; *Fowlkes* v. *Nashville & Decatur R. R. Co.*, 9 Heisk. 829; *Littlewood* v. *Mayor*, 89 N. Y. 24; *Southern Bell Tel. Co.* v. *Cassin*, 111 Georgia, 575.

The distinguishing features of that act are identical with the act of Congress of 1908 before its amendment: First, it is grounded upon the original wrongful injury of the person; second, it is for the exclusive benefit of certain specified relatives; third, the damages are such as flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries.

The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings. Tiffany, Death by Wrongful Act, §§ 153, 154; *Illinois Cent. R. R. Co.* v. *Barron*, 5 Wall. 90, 105, 106; *Davis* v. *Guarnieri*, 45 Oh. St. 470; *Blake* v. *Midland Railway*, cited above; *Hurst* v.

*Detroit City Railway*, 84 Michigan, 539, 545; *Munro* v. *Pacific Dredging Company*, 84 California, 515.

The word "pecuniary" did not appear in Lord Campbell's Act, nor does it appear in our act of 1908. But the former act and all those which follow it have been continuously interpreted as providing only for compensation for pecuniary loss or damage.

A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, "not only to express the character of the loss of the beneficial plaintiff which is the foundation of the recovery, but also to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation." Patterson, Railway Accident Law, § 401.

Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and, when the beneficiary is a child, for the loss of that care, counsel, training and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation.

In *Tilley* v. *Hudson River Railroad*, 24 N. Y. 471, and 29 N. Y. 252, the court stated that "the word 'pecuniary' was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though greivous and painful to be borne, cannot be measured or recompensed in money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of damages."

To the same effect are the cases of *Schaub* v. *Hannibal & St. J. Railway Company*, 106 Missouri, 74; S. C., 16

S. W. Rep. 924, which was followed by the Circuit Court of Appeals for the Eighth Circuit in *Atchison &c. Ry.* v. *Wilson,* 48 Fed. Rep. 57; *Lett* v. *Railway,* 11 Ontario App. 1; *Pennsylvania Railroad* v. *Goodman,* 62 Pa. St. 329, 339; *Railroad* v. *Rush,* 127 Indiana, 545; Tiffany, Death by Wrongful Act, §§ 154 to 162, inclusive; Patterson, Railway Accident Law, §§ 401 to 406.

No hard and fast rule by which pecuniary damages may in all cases be measured is possible. In *Lett* v. *Railway,* cited above, it was said (p. 29) in the opinion of Patterson, J. A., after a review of all the English cases construing the act of Lord Campbell—

"That there is through them all the same principles of construction applied to the statute. Each fresh state of facts as it arose was dealt with, and furnished a further illustration of the working of the Act. The party claiming was held to be entitled or not to be entitled, the scale of compensation acted upon by the jury was approved or disapproved, in view of the immediate circumstances; but in no case has it been attempted to decide by anticipation what are the limits beyond which the benefit of the statute cannot be claimed."

The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, "according as the action is brought for the benefit of the husband, wife, minor child or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled." Tiffany, Death by Wrongful Act, §§ 158, 160, 161, 162.

The court below instructed the jury that they could not allow damages for the grief and sorrow of the widow, or as a "balm to her feelings." They were directed to confine themselves to a proper compensation for the loss of any pecuniary benefit which would reasonably have

been derived by her from the decedent's earnings. The court did not stop there, but further instructed the jury, that, "In addition to that, independent of what he was receiving from the company, his employer, it is proper to consider the relation that was sustained by Mr. Wisemiller and Mrs. Wisemiller, namely, the relation of husband and wife, and draw upon your experiences as men and measure, as far as you can, what it would have reasonably been worth to Mrs. Wisemiller in dollars and cents to have had, during their life together, had he lived, the care and advice of Mr. Wisemiller, her husband." This threw the door open to the widest speculation. The jury was no longer confined to a consideration of the financial benefits which might reasonably be expected from her husband in a pecuniary way.

A minor child sustains a loss from the death of a parent, and particularly of a mother, of a kind altogether different from that of a wife or husband from the death of the spouse. The loss of society and companionship, and of the acts of kindness which originate in the relation and are not in the nature of services, are not capable of being measured by any material standard. But the duty of the mother to minor children is that of nurture, and of intellectual, moral and physical training, such as when obtained from others must be for financial compensation. In such a case it has been held that the deprivation is such as to admit of definite valuation, if there be evidence of the fitness of the parent and that the child has been actually deprived of such advantages. *Tilley* v. *Railroad Co.* and *Lett* v. *Railway Company*, both cited above. If the case at bar had been of such a character, the loss of "care and advice" might have been a proper matter for compensation.

Neither "care" nor "advice," as used by the court below, can be regarded as synonymous with "support" and "maintenance," for the court said it was a deprivation

to be measured over and above support and maintenance. It is not beyond the bounds of supposition that by the death of the intestate his widow may have been deprived of some actual customary service from him, capable of measurement by some pecuniary standard, and that in some degree that service might include as elements "care and advice." But there was neither allegation nor evidence of such loss of service, care, or advice; and yet, by the instruction given, the jury were left to conjecture and speculation. They were told to estimate the financial value of such "care and advice from their own experiences as men." These experiences which were to be the standard would, of course, be as various as their tastes, habits and opinions. It plainly left it open to the jury to consider the value of the widow's loss of the society and companionship of her husband.

In this part of the charge the court erred. The assignments of error are otherwise overruled. But for this error the judgment must be reversed and a new trial ordered.

MR. JUSTICE HOLMES concurs in the result.