González, Plaintiff and Appellant, *v.* Fajardo Development Company, Defendant and Appellee.

## Appeal from the District Court of Humacao in an Action for Damages.

### No. 2475.—Decided March 9, 1922.

Damages—Employer's Liability—Interstate Commerce—Negligence.—The federal law known as the Employer's Liability Act is applicable in Porto Rico to an action for damages for the death on March 15, 1916, of an employee of a public railroad because of the negligence of a railroad corporation, although neither the victim nor the corporation was engaged in interstate commerce at the time of the accident.

Id.—Id.—Duty of Employee.—The fact that a switchman who was letting out a freight train abandoned his post and ran upon seeing that one of the cars had left the track, and in his flight was struck and killed by the derailed car, is no ground for holding that the victim was not in the discharge of his duties when the accident occurred.

Id.—Contributory Negligence.—An employee, whether minor or adult, who without fault on his part is suddenly placed in a position of peril by his employer, is not guilty of contributory negligence in failing to decide quickly and act upon the wisest course for escaping the threatened danger.

Id.—Filiation—Action by Father.—Evidence of the existence of an action of filiation brought by the alleged natural daughter of the employee killed as a result of the negligence of the defendant, and of another action by her for damages against the said defendant for the death of the putative father, both actions being terminated by final judgments of dismissal for abandonment, can not deprive the lawful father of the victim of his right to damages for the death of his son.

Id.—Evidence.—The uncontradicted testimony of the plaintiff that the victim was his legitimate son and a certificate of marriage of the father and mother of the victim are sufficient to show the right of the father to bring this action, without the necessity of producing the birth certificate of the son.

Id.—Judgment—Amount of Damages.—In giving judgment for damages to a father for the death of his son under the federal Employer's Liability Act the pecuniary damages actually suffered by the father should be taken into account.

The facts are stated in the opinion.

*Mr. A. Aponte, Jr.,* for the appellant.

*Mr. L. Muñoz Morales* for the appellee.

Mr. Chief Justice del Toro delivered the opinion of the court.

On March 16, 1916, Santiago Medina, a bachelor of twenty-three years of age employed as a switchman on the rail-

road of the defendant, was killed by a car of one of the defendant's trains.

Antonio González, whom the court appointed as administrator of the estate of the deceased, brought this action on behalf of Antonio Medina, the lawful father of Santiago, to recover the sum of $19,240 on the ground that the death was due to the defendant's negligence.

The defendant answered. The case was tried and the court finally dismissed the complaint. The plaintiff appealed and assigned in his brief three errors, as follows: 1, In holding that the Act of Congress known as the Employer's Liability Act was not applicable. 2, In finding that the deceased was not acting in the course of his employment when the accident occurred. 3, In not sustaining the complaint and fixing the corresponding amount of damages.

We shall consider the errors in the order assigned.

1. It is an admitted fact that the defendant in this case is a corporation engaged as a public carrier in operating a railroad between Mameyes and Naguabo in the eastern part of Porto Rico. It is also admitted that Santiago Medina was an employee of the defendant and was acting as such on the day of the accident. The action was brought by the administrator of the estate of the deceased for the benefit of his lawful heir, who depended upon Medina for his subsistence. The accident occurred on March 16, 1916, or prior to the enactment of the Jones Act.

To conclude that the federal law invoked was applicable in Porto Rico at the time of the accident, it will suffice to refer to the cases of *American Railroad Co.* v. *Didricksen,* 227 U. S. 145, 148, and *American Railroad Co.* v. *Birch,* 224 U. S. 547.

The trial court admits that it was, but holds that "neither the defendant corporation, nor its employee, Santiago Medina, was engaged in interstate commerce at the time of the accident so that an action might be maintained under the

Employer's Liability Act approved by the Congress of the United States in 1908.''

The court's error is evident. Undoubtedly the mind of the judge was fixed on section 1 of the Act which refers to ''every common carrier by railroad while engaging· in commerce between any of the several States or Territories * * *.'' Section 2 does not apply to interstate commerce and is directly applicable. It reads as. follows:

''Sec. 2.—That every common carrier· by railroad in the Territories, the District of Columbia, the Panama Canal Zone, or other possessions of the United States shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and,. if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.''

2. In the opinion the trial court said:

''The plaintiff alleges in the ninth count of his complaint that the death of the said Santiago Medina was due to the defective, insufficient and unsafe condition of the tracks of the defendant corporation. The contention of the defendant is that the accident was inexplicable, inasmuch as the tracks in question were in good condition as was also the derailed car. It is true that the evidence as to the cause of the accident is quite contradictory, but the preponderance of the evidence leads us to believe that the tracks in question were defective, for otherwise the accident which has given rise to this action would not have occurred. We are of the opinion also that the defendant corporation was negligent in ·allowing the cars loaded with sugar cane to be let loose on a down grade without a locomotive in front of them and without any means of controlling the momentum with which the cars ran down the decline.

''However, in order that the defendant corporation may be held

responsible for the death of Santiago Medina it is not sufficient to establish that the said corporation was negligent in the construction of its tracks and the operation of its trains, but it is also necessary to prove that such negligence was the proximate cause of the death. And as regards this fundamental element of the action, we are of the opinion that the plaintiff's allegations are (not) sustained by his evidence. It was alleged in the complaint and proved at the trial that Santiago Medina was working as a switchman and his duty at the time of the accident was to operate the switch-lever of a certain sidetrack which connected with the main track laid on the Oriente plantation. In order to change the switch it was necessary to stand near the track and make the connection by operating the lever, and in the 8th count of the complaint it is alleged 'that in compliance with orders of the defendant company Santiago Medina operated the switch in the manner indicated, and that while doing so and when only a few of the cars that were to take the main track has passed, one of the loaded cars upset at the said place and Medina was caught under it and killed instantly.'

"The evidence does not support this allegation. On the contrary, it was established conclusively that the car was derailed long before it reached the place where Medina was, and that instead of remaining at his post Medina ran ahead of the car which overtook him and upset and killed him. Therefore, Medina was not in the discharge of his duties as employee when the accident that cost him his life occurred. The evidence shows also that notwithstanding its derailment the car passed the switch-lever where Medina should have stood and ran some distance beyond it, so that if Medina had remained at the place where he had to discharge his duties as employee, he would not have been hurt. Under such circumstances the court is firmly convinced that the proximate cause of the death of Santiago Medina is not attributable to the defendant corporation."

We have examined carefully all of the evidence introduced and in our opinion it not only establishes the negligence of the defendant corporation, as found by the district court, but also shows that Santiago Medina was killed while in the discharge of his duties. We quote from the testimony of two of the witnesses; one for the plaintiff and the other for the defendant.

Patricio Navarro, a witness for the plaintiff, testified as follows:

"That he is an employee of the defendant, The Fajardo Development Company, and was such during the whole month of March, 1916. That his duties as such employee are those of engineer of locomotive No. 5. That on March 16, 1916, the said locomotive was in operation and on that day the accident to Santiago Medina occurred. That on that day the witness and the other employees of the sugar factory entered the Oriente branch track and began to haul out the loaded cars that were there and shunt them to the sidetrack in order to replace them by empty cars, and then they went to the siding where the loaded cars were and while Santiago Medina was standing by the switch one of the cars  *  *  *.  That at that moment Angel Velilla loosened the brakes of the cars so that they could be moved. That then the other cars came and Santiago Medina was standing by the switch. That Velilla loosened the brakes so that the cars would go down the decline by the force of gravitation and two cars passed without anything happening; then another one passed, but it was off the track and Santiago Medina, who was standing by the switch, upon seeing that the derailed car was coming, ran forward  *  *  *."

Angel Velilla, a witness for the defendant, testified:

"That when the accident occurred the witness was loosening the brakes of one of the cars. That after its brakes were loosened the car immediately passed by and it seems that Medina saw it and tried to save himself by running forward, but the car overtook him. That if the witness had been at Medina's post by the switch and had seen that the car was coming upon him, as happened to Medina, the witness would not have remained there, but would have run like Medina did. That if the witness had been on the car when it left the track he would have tried to save himself by jumping off. That at the place where the accident occurred there is a slight down grade. That the momentum of these cars was sufficient to carry along a car after it had left the track. That the derailed car continued running off the track for some distance before it upset. That the speed at which that car was going was sufficient to permit its running off the track on its wheels on the ground for some thirty feet. That the derailed car was not the last one of the train, but the fourth one  *  *  *;

that when the first car passed Medina was standing at his post by the switch for the purpose of changing the switch after all the cars had passed in order to let out the locomotive; that there is a fairly steep grade there; that the first, second and third cars passed without anything unusual occurring and meanwhile Medina stood by the switch, and when the fourth car passed it left the track. That when it upset the cars uncoupled; that the car left the track some distance on this side of the switch and passed by the switch where Santiago Medina had been standing, but kept on running and caught him when it upset.''

Santiago Medina was at his post as switchman. The first cars let loose in the negligent manner referred to passed by without anything happening. Medina remained at his post. The third car, according to Navarro, or the fourth, according to Velilla, left the track and when Medina saw it coming upon him he fled down the decline, but the car overtook him and upon overturning killed him. It is contended that because Medina ran and his death occurred while he was running, the accident took place when Medina was not in the discharge of his duties. It is true that the evidence tends to show that although the car left the track at some distance above the switch, it upset below it and that if Medina had stood where he was the car would not have touched him. But general laws are enacted for the average man, and what else would the average man have done but what the unfortunate Medina did in this case? The question is not a new one.

In his brief the appellant quotes the following:

''A person, without his fault, placed in a situation of imminent danger, is not to be held to the exercise of the same care and circumspection that prudent persons would exercise where no danger is present. He is not guilty of contributory negligence, as matter of law, because he fails to make the most judicious choice between hazards presented or would have escaped injury if he had chosen differently. The question in such case is not what a careful person would do under ordinary circumstances, but what would he be likely

to do, or might reasonably be expected to do, in the presence of such existing peril.'' II Bailey Personal Injuries (2nd ed.) p. 1461.

''Under this rule when a collision or other danger is imminent employees jumping from the engine, a car, or a hand car, have been held not guilty of contributory negligence although it was not neces sary to jump to save themselves, or injury could have been prevented by doing some other act.  So it is not contributory negligence, under such circumstances, to attempt to escape in the wrong direction, nor for an engineer or fireman to remain on his engine, or to jump in a wrong direction.''  *Id. Id.*, p. 1463.

''A person placed by the negligence of another in a place of sudden danger, and who, under the influence of great terror does an act which may contribute to his injury or death, cannot be charged with contributory negligence, so as to bar a recovery by him.''  *Consolidated Traction Co.* v. *Scott*, 55 Am. St. Rep. 620.

''An employee placed in danger of his life by the negligence of his superior is not absolutely bound to escape, if there is time for him to do so, but only to do all that a man of ordinary care and diligence would have done under the circumstances to escape.''  *Bessemer Land & Etc. Co.* v. *Campbell*, 77 Am. St. Rep. 18.

''A servant, whether minor or adult, without fault on his part, suddenly placed in a position of peril by his employer, is not guilty of contributory negligence in failing to quickly decide and act upon the wisest course to escape the threatened danger.''  *Neilson* v. *Hillside Coal and Iron Co.*, 47 Am. St. Rep. 886.

Therefore, in his sudden flight from danger Medina not only continued as an employee of the defendant, but also was not even guilty of contributory negligence which might be considered in mitigation of the damages.

3. In connection with the third assignment we shall discuss several questions raised by the appellee in its brief. It is maintained: A, That Medina's father is not entitled to recover because there was a natural child.  B, That he is not entitled to recover because it has not been shown that the father depended upon the son.  C, That the relationship between the beneficiary and Medina was not duly established.

A. In the answer it was alleged that Medina had a natural child.  At the trial the records of two suits were presented

in evidence; one being an action of filiation brought by Rosa Márquez in the name of Petra Maldonado against Antonio Medina praying for a declaration that the plaintiff was the natural child of Santiago Medina, and the other an action brought by the same plaintiff against the defendant in this case to recover damages for the death of Medina who was alleged to be the natural father of Petra Maldonado. But although this is true, it was shown at the trial that in both cases final judgments had been entered on the abandonment of the actions by the plaintiff.

The case of *American Railroad Company of Porto Rico* v. *Wolkers*, 22 P. R. R. 264, cited by the appellee, was one of two natural children whose acknowledgment had been established by a court judgment. In this case there is no evidence that Petra Maldonado was the acknowledged natural child of Medina.

B. Antonio Medina testified at the trial, among other things, that Santiago Medina "was his son by María Carmona, his wife. That the said María Carmona died. That Santiago Medina at the time of his death was a bachelor * * *. That his son * * * helped to pay for the subsistence of the witness by giving him three, four or five dollars weekly. That the son lived with the witness in his home on Union Street, Fajardo. * * * That after the death of his son the witness endeavored to make a living by selling some poultry and animals that he had and by buying on credit in the store of Faustino Berríos until finally he had to sell his house in order to support himself * * *. That the witness has other children, but they are all females."

This testimony was not contradicted and in our opinion it is sufficient to show the relationship of dependency if such dependency was necessary for maintaining the action.

C. We have just seen that Antonio Medina repeatedly testified at the trial, without objection by the defendant, that Santiago was his legitimate son. This evidence, together

with a certificate of the marriage of Antonio Medina and María Carmona, is sufficient, in our opinion, and it was unnecessary to produce the certificate of birth of Santiago, as contended by the appellee.

Having reached the foregoing conclusions, it is necessary to hold that the court also committed the third and last of the errors assigned and, therefore, that the judgment must be reversed.

For the purpose of rendering the judgment that the district court should have rendered, consideration must be given to the age of the beneficiary, the aid that he received from his son and the personal conditions of the son. The exact age of the beneficiary does not appear, but naturally he must be of advanced age. He received from his son from three to five dollars a week. The son was 23 years old at the time of his death and was strong, a good worker, and earned $10 a week.

These are the facts. The jurisprudence which we must follow is found in the syllabus to the opinion of the Supreme Court of the United States in the case of *Mich. Cent. R. R.* v. *Vreeland,* 227 U. S. 59. It reads as follows:

"At common law the right of action for an injury to the person is extinguished by the death of the party injured whether death be instantaneous or not. As the Employer's Liability Act of 1908 did not provide for any such survival the right was extinguished by death.

"At common law loss and damage may accrue and a right of action accrue to persons dependent upon one wrongfully injured; but this cause of action, except for loss of services prior to death, abates at the death.

"The evident purpose, however, of Congress, in enacting the Employer's Liability Act of 1908 was to save a right of action to certain relatives dependent upon the employee wrongfully injured for the loss and financial damage resulting from his death, and there is no express or implied limitation of the liability to cases in which death was instantaneous.

"This liability is for pecuniary damage only, and the statute

should be construed in this respect as Lord Campbell's Act has been construed, not as granting a continuance of the right the injured employee had, but as granting a new and independent cause of action.

"The pecuniary loss recoverable under the Employer's Liability Act of 1908 by one dependent upon the employee wrongfully killed must be a loss which can be measured by some standard, and does not include an inestimable loss such as that of society and companionship of the deceased or of care and advice in case of a husband for his wife."

In this case $4,000 seems sufficient to secure to the beneficiary during the rest of his life an income equal to the amount that he received from his son at the time of his son's death. Judgment will be entered for that sum, without special imposition of costs.

*Reversed.*

Justices Wolf, Aldrey and Hutchison concurred.