REID, Judge.
This is a suit brought under the Jones Act (46 U.S.C.A. § 688) by the mother of an unmarried man seeking to recover damages in the sum of $100,000.00 for the death of her seaman son drowned in the Mississippi River during the course of his employment on the tugboat “Harriet Ann” owned by the defendant, Upper Mississippi Towing Corporation.
This case has previously been before this Court (Presley v. Upper Mississippi Towing Corporation, 141 So.2d 411) wherein this Court affirmed the verdict of the jury insofar as it decreed liability on the part of the defendant, Upper Mississippi Towing Corporation, and annulled and reversed the award of damages made in favor of the plaintiff and remanded the case to the District Court for retrial of the issue of damages only, consistent with the views expressed in the Court’s opinion.
The second trial, as was the first, was before a jury and resulted in a verdict in favor of plaintiff and against the defendant in the amount of $35,000.00. Judgment was rendered, read and signed accordingly on November 27, 1962. On December 6, 1962 the defendant entered an appeal, both suspensive and devolutive, and on December 7, 1962 the plaintiff entered a devolu-tive appeal from the judgment.
The facts pertinent to the issues here are set forth in this Court’s opinion in Presley v. Upper Mississippi Towing Corporation, 141 So.2d 411, as follows:
“The evidence in the case at bar shows that at the time of his death (and for a considerable period prior thereto) Barney W. Presley, Jr. (who was 27 years old and unmarried) was employed by defendant aboard the tug ‘Harriet Ann’ at a take-home pay of approximately $350.00 per month. His alternate biweekly checks of $174 and $172, respectively, were sent by decedent to plaintiff, decedent’s widowed mother, who endorsed and cashed them, employing approximately $250 from the proceeds thereof each month to defraying the expenses of operating a home, title to which was in decedent and in which plaintiff resided with four of her other children, namely, Franklin Wayne, age 17, Harvey Neal, age 15, Charlie Warren, age 8, and Vera Ellen, age 6, decedent’s brothers and sister, respectively, all of whom were attending school. Decedent worked aboard the tug ‘Harriet Ann’ 30 days on and 20 days off which off periods he spent in the home occupied by his mother, brothers and sister. In addition to providing the home, decedent also owned a truck and a cow which plaintiff and other members of the family were permitted to use and enjoy during decedent’s absence from home.
“With the approximately $250 of decedent’s income which plaintiff used each month, she paid grocery bills amounting to approximately $150, the remainder of said $250.00 being spent for clothing and necessities for her children but virtually none of which she used for herself. She frankly conceded her needs were simple and few and were met out of welfare payments which she received. She purchased no clothing with money given her by decedent, her requirements in this regard being fulfilled by a daughter in military service who sent plaintiff clothing from time to time. The remaining $100 per month of decedent’s income, plaintiff kept for said decedent. It is clear, therefore, that decedent was maintaining his mother, plaintiff herein, and his younger brothers and sister in decedent’s own home and that they all jointly and collectively enjoyed the benefits of decedent’s extraordinary generosity.”
An examination of this Court’s earlier decision will show that it consisted of three *419 opinions, the first a decree ordering the case remanded for retrial on the issue of damages or quantum only. Upon application of the defendant this Court issued a per curiam annulling and rescinding its original decree and decreeing that the matter be remanded to the Trial Court “for a new trial in toto on all issues involved in this lawsuit consistent with the views herein expressed.” Subsequent to the rendering of that opinion the plaintiff applied for a rehearing and on the second rehearing the Court recalled its per curiam and reinstated its original decree under which' the judgment of the Trial Court was affirmed insofar as it decreed liability on the part of the defendant, Upper Mississippi Towing Corporation, and annulled and reversed the said opinion with respect to the award of damages made in favor of the plaintiff and remanded the case for retrial on the issue of damages only, but with the right of defendant to offer evidence, if any, of the decedent’s alleged contributory negligence only in regard to the diminution of damages.
Upon the trial of the case the defendant stated that it would not offer evidence on contributory negligence on the part of Barney W. Presley, Jr., for the reason that it considered it impossible to demonstrate contributory negligence without all facets of the lawsuit being retried, but stated that it was not abandoning its plea, and in the event of appeal would reurge on behalf of the defendant that it was improper for the Court of Appeal to limit this lawsuit for retrial on a restricted and limited basis.
The defendant bases its appeal on alleged errors committed by the Trial Court in its instructions to the jury, as well as to certain rulings of the Trial Court concerning evidence offered on the second trial, which the defendant alleges resulted in an excessive and unreasonable award to the plaintiff. The defendant urges that this cause be remanded for a new trial, not on a limited basis, but on all issues, in order that a complete determination might be made by a new jury on issues of both liability and quantum.
The plaintiff’s appeal is based on alleged errors of the Trial Court, primarily in regard to the instructions given to the jury by the Trial Judge which counsel for plaintiff alleges were prejudicial and resulted in an inadequate award and urges that the case be remanded for a new trial on the question of quantum. Plaintiff objects to the request of the defendant that the matter be remanded for a new trial on the issues of both liability and quantum, contending that as the result of this Court’s first opinion the issue of liability has been settled.
Insofar as this Court is concerned, the sole question before it on this appeal is the correctness of the verdict of the jury in the second case concerning the matter of quantum and this Court will not reconsider the decision rendered by it in its prior opinion affirming the verdict of the first jury in regard to liability and will not entertain any of the arguments of the defendant reurged in its brief in this regard.
 In discussing quantum in the first opinion, this Court stated:
“The measure of quantum adopted and established by the Federal courts in cases arising under the Jones Act (which criteria is binding upon state courts hearing such cases) has on numerous occasions been stated and made clear. In Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 195, 57 L.Ed. 417, the United States Supreme Court declared:
“ ‘ * * * essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being * * *, known as Lord Campbell’s act
******
“ ‘The distinguishing features of that act are identical with * * * (FELA): First, it is grounded up *420 on the original wrongful injury of the person; second, it is for the exclusive benefit of certain specified relatives; third, the damages are such as flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries.
“ ‘The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. * * * There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings. * * *
“ ‘The word “pecuniary” did not appear in Lord Campbell’s act, nor does it appear in our act * * *. But the former act and all those which follow it have been continuously interpreted as providing only for compensation for pecuniary loss or damage.
“ ‘A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, “not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.” * * *
“ ‘Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the * * * child, * * *.’
“In American R. Co. of Porto Rico v. Didricksen, 227 U.S. 145, 33 S.Ct. 224, 225, 57 L.Ed. 456, we note:
“ ‘The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee.’
“The foregoing rule was reiterated in Chesapeake & O. R. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 631, 60 L.Ed. 1117, in which the Federal Supreme Court states:
“ ‘The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. (Citing cases) So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self evident that a given sum of money in hand is worth more than the like sum of money payable in the future.’ ”
In regard to erroneous rulings, this Court said in its earlier opinion the following:
“ * * * In cases under the Jones Act appellate courts can and should reverse the judgment of a trial court in the event of erroneous rulings by the lower tribunal on questions of law such as erroneous instruction to the jury regarding the rules and law applicable in such cases unless it affirmatively appears from the record as a whole that such errors were harmless. * * * ”
It is the opinion of this Court that the allegations of error alleged by both the plaintiff and the defendant should be viewed in the light of the above quoted state *421 ments. The allegations of error by the defendant will be considered first and those of the plaintiff second.
The defendant’s first allegation of error is that the Trial Court erred in allowing the plaintiff to produce and offer in evidence the life jacket taken from the decedent’s body when it was recovered from the Mississippi River. Defendant objected on the grounds that it had no relevancy as to quantum and was introduced merely to incite the jury and to create an impression that the life jacket was inadequate and the interest of the defendant was prejudiced insofar as obtaining from the jury a realistic award. The Trial Court admitted the life jacket over the objection of the defendant with the instruction that the offering of the life jacket went to the weight of the evidence. In answer to this contention of the defendant the plaintiff states, and the statement is borne out by the record, that there was no objection to the introduction of the jacket at the time of the first trial, and therefore, it was already in evidence, and argues the jacket was introduced in evidence to prove pain and suffering. Plaintiff argues the introduction of the life jacket was used in connection with testimony to show that the decedent had the life jacket on when last seen on the tugboat and the jacket was found wrapped around his wrist when the body was recovered, indicating that the decedent was alive even after he was in the water and under the barge. Plaintiff further stated the Jones Act provides two grounds for recovery, one of which is recovery for pain and suffering. This Court is in agreement with plaintiff’s argument, especially in view of the fact that the defendant’s ground for objecting to the introduction was based on the question of relevancy when it can be plainly seen that the introduction was relevant to the awarding of damages for pain and suffering.
The defendant next urges that the Trial Court was in error in not permitting the defendant to bring out evidence regarding the status of the plaintiff’s family as of the date of the second trial, especially concerning the second son, Paul Gene Presley, age 24, who returned from military service about five or six weeks after Barney W. Presley, Jr., drowned. The defendant contends that it was material to show that after this able-bodied 24 year old man returned home that he could be expected to assume a reasonable part of the responsibility of the support of his mother, Mrs. Corine Presley. Counsel for defendant further argues that he was not allowed to show sources of income that Mrs. Presley had at the time of the second trial, nor whether any of the children had married or were otherwise independent and generally what decedent would have considered her needs to be at the time if he had lived. The defendant argues that submission of this type of evidence would have been material in placing a monetary value on the loss of benefits that Mrs. Presley might reasonably have been expected to receive if her son had not drowned.
 As set forth in this opinion, the damages recoverable under the Jones Act are limited to such loss as results to the beneficiary because of deprivation of a reasonable expectation of pecuniary benefits by the wrongful death of the decedent. It would follow that this expectation would be based upon facts that exist at the time of the death. The question is not the chain of circumstances but the benefits which a person would have reasonably been expected to obtain had not the decedent died from his injuries. To have permitted the defendant the line of questioning sought would have been contrary to the meaning of the Act. It is the opinion of this Court that the rule of McFarland v. Illinois Central R. R. Co., 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246, is applicable. In that case the Court held that loss suffered by surviving spouse is determinable by conditions existing at the time of the wrongful death and the wrongdoer will not be permitted to show and rely on remarriage in seeking *422 reduction of damages. It is at the time of the wrongful death that the right or cause of action exists and it is as of that time that the loss should be measured. Furthermore, an examination of the record in this case shows that the defendant was able to get into the record most of the information about which it complains through argument to the jury and it appears from the record that even had’the Trial Judge been in error in his ruling, the defendant would not have been prejudiced.
The defendant further objected to the rule of the Trial Court in allowing the plaintiff to offer in evidence color pictures showing the decedent in his casket. The pictures were allegedly offered to show evidence of swelling and physical markings on the neck and face of the decedent. The defendant’s objections were threefold: First, that the pictures did not reflect any markings or swelling of any kind; Second, that, if so, the markings and swelling had not been associated with the defendant; and Third, the pictures were extremely objectionable for the reason they were inflammatory, prejudicial to defendant and solely designed to engender sympathy from the jury. These photographs were admitted with an instruction to the jury they should be given such weight as the jury felt they merited. The plaintiff argued that the photographs were introduced in connection with the testimony of the witness J. D. Porter who testified relative to the decedent’s swollen neck and a bruise on his cheek, and were introduced as further proof of pain and suffering. In this connection it is the opinion of this Court that the pictures were admissible in connection with the testimony introduced by the plaintiff concerning pain and suffering and that the question of whether or not they showed evidence of swelling and physical markings on the neck and face were questions for the jury to decide and objection to the admissibility on the ground is unwarranted.
The defendant made seven exceptions to the Court’s charges to the jury, contending the charges were improper and prejudicial to its interest.
The first such exception deals with the contention that throughout the charge given by the Judge to the jury, “language was lifted out of context and used in instructing the jury as to what it was not necessary for Mrs. Presley to prove rather than tell the jury what Mrs. Presley had to establish to discharge the burden of proving her case.” The defendant objected to the Trial Court instructing the jury that it was not necessary for Mrs. Presley to show she was dependent, not necessary to show how much she needed, that neither need nor dependence was a criteria and it was only necessary that she establish she had a reasonable expectation of pecuniary benefits and what she could reasonably have expected, not what she would have received. In view of the test for the measure of damages as set forth herein, that is, “the deprivation of the reasonable expectation of pecuniary benefits”, it is the opinion of this Court that the language used by the Trial Judge is correct and is in line with the jurisprudence.
The second exception was to the Trial Court’s refusal to give the following instruction to the jury, which failure defendant claimed was prejudicial to its interest :
“In arriving at the measure of damages in this case, it is proper for you to consider any past contributions made to Mrs. Presley by Barney during his lifetime, inasmuch as they may have a bearing on what Barney intended to contribute to his mother in the future; but, in considering those past contributions you are to take into account only such money or other pecuniary benefits which you find Barney intended for his mother and you are to disregard any money or other pecuniary benefits which were actually furnished by Barney to his brothers and sister through Mrs. Presley, his mother.”
*423 The Trial Judge’s instruction to the jury was as follows:
“In order to grant a recovery to Mrs. Presley, it is only necessary that she establish that she had a reasonable expectation of pecuniary benefits from the continued life of her son, Barney Presley, Jr. Mrs. Presley is only required to prove what she could reasonably expect — she is not required to prove what she would, in fact, have actually received.”
In the first trial of this case this Court stated as follows:
“The use and disposition of decedent’s contributions by the recipient is but another factor to be considered and weighed by the jury in resolving the issue of the value of pecuniary benefits plaintiff might reasonably anticipate in futurity. * * * Insofar as it may shed some light upon the reasonable expectancy of plaintiff to receipt of contributions from decedent, the question of her use and disposition thereof is a matter to be determined by the trier of fact.”
In view of the opinion quoted above, the charge of the Trial Court to the jury on the second trial is in line with this Court’s holding and was certainly not prejudicial to the defendant. There is no question but what the requested instruction number four would have done violence to this Court’s ruling and would have taken away this issue of fact from the jury.
The defendant objected to that portion of the Court’s charge to the jury wherein the Judge said there is no better way to predict the future than by past performance and previous contributions, though only one of several measures regarding damages, should be considered as an element and considered with all of the evidence. The defendant contends that in this charge the Court is commenting upon the evidence. This is without merit.
Defendant’s fourth exception is to the portion of the Trial Judge’s instruction as to what constitutes pecuniary loss and is wholly without merit in that the charge as given is an exact definition as fixed by the United States Supreme Court in Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, and as quoted previously in this opinion.
The defendant has apparently abandoned its exception concerning special instruction number eleven as it has not been reurged on this appeal.
Defendant further excepts to the failure of the Trial Judge to give its specific instruction number twelve as follows:
“You should also take into consideration the ages of any brothers and sisters left by the decedent and the possibility that as they become able to contribute to their mother, what effect that would have had on Barney’s willingness to contribute to her or the amount which he might then be reasonably expected to contribute to her.”
Instead the Court gave the following instruction :
“You should take into consideration the ages of any brothers and sisters left by the decedent and for whose maintenance and support any part of the contribution made by him to his mother might have been used.”
Defendant maintains that the charge as given by the Judge was inadequate and gave the impression that decedent was obligated to support his brothers and sister and failed to suggest to the jury it should decide what effect the age of any surviving brothers and sisters would have had on decedent’s willingness to continue to contribute to the plaintiff or the amount he might reasonably have been expected to contribute to her. This Court finds no error in the charge. as given by the Judge and there is nothing to indicate the jury might have felt the decedent was obligated *424 to support his brothers and sister, especially when the charge is considered with the entire record in this matter. The effect of the ages of the surviving brothers and sister on the decedent’s willingness to continue to contribute to the plaintiff has been commented upon in connection with the defendant’s contention that the Trial Judge had failed to permit it to offer evidence on the question of what change or changes had taken place in the Presley family since the decedent’s drowning and what was said in that regard is apropos here.
The last exception by the defendant to the Trial Judge’s instructions to the jury concerns the refusal of the Trial Judge to instruct the jury as follows:
“You are instructed that unless you find from the evidence that Barney Presley, was physically injured before he drowned, there can be no award under the Jones Act to Mrs. Presley for any conscious pain and suffering Barney may have sustained before he died. The emotional distress caused by fear of drowning — in other words, mental anguish and fright — are not alone sufficient to support an award of damages for that item.”
The defendant maintains that it was erroneous on the part of the Trial Court to fail to make it clear to the jury that Mrs. Presley was not entitled to any award for any alleged conscious pain and suffering sustained by the decedent before drowning unless shown that the alleged conscious pain and suffering was the result of a physical injury, and cited as authority for this instruction the decision Black Gull, 2 Cir., 82 F.2d 758, cert. den. American Diamond Lines v. Peterson, 298 U.S. 684, 56 S.Ct. 954, 80 L.Ed. 1404, from which the defendant quoted as follows:
“ * * * knowledge of the danger which he faced while battling the storm in the small yawl may well have caused mental anguish even to so hearty and experienced a mariner as McIntyre, but the negligent causing of emotional distress which does not result in bodily harm is not recognized by the law as an actionable wrong. * * * hence no recovery could be had under the second cause of action alleged on behalf of McIntyre and based solely on the Jones Act.”
Defendant further contends that the only evidence in the record concerning pain and suffering was that of Dr. Albert L. Mc-Quown, a specialist in the field of pathology, whose testimony defendant alleged dealt entirely with the pain a person suffers after his lungs have been filled with water and his brain is deprived of oxygen. The actual instruction given by the Court in this regard is as follows:
“As the second item of damages, plaintiff is entitled to recover for any conscious pain and suffering which you may find from the evidence that the decedent experienced prior to his death. If you find that the decedent experienced only such pain and suffering as were substantially contemporaneous with his death, or mere incidence to it, or only the short period of insensibility which sometimes intervenes between fatal injuries and death, then you should award nothing for his pain and suffering.”
Without going into the question of law, it is the opinion of this Court that the Trial Judge’s charge meets the test of the Black Gull case as quoted by the defendant more definitively than does the charge as requested by the defendant and in the opinion of this Court is not prejudicial to the defendant.
It is the opinion of this Court the defendant has failed to set forth any prejudicial errors in connection with its ruling on either the admissibility of the evidence or its charges to the jury which would in any way justify this Court in reversing the judgment rendered herein.
*425 In regard to the plaintiff’s objections to the ruling of the Trial Judge, an examination of the record as a whole shows that these rulings, even if erroneous (which are not erroneous in the opinion of this Court), are harmless to the plaintiff and could not in any manner be considered prejudicial. See Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853.
This Court has examined the entire record and is of the opinion the errors complained of are not either erroneous or harmful and, therefore, concludes it is unnecessary to further comment upon them,
It is, therefore, the opinion of this Court the judgment rendered herein should be affirmed, the cost of the appeal to be borne one-half by the plaintiff and one-half by the defendant.
Affirmed.