J. B. BRUCKSHAW, Administrator, Appellee, v. CHICAGO, R. I. & P. R. Co., Appellant.

**MASTER AND SERVANT:** The Relation—Statutory Regulation—
1 **Federal Employers' Liability Act—"Interstate Commerce."** Switching and assembling empty foreign freight cars, preparatory to their immediate removal out of the state, is an act of interstate commerce, even though the employee so engaged was solely employed on a run wholly within this state.

**MASTER AND SERVANT:** Actions—Federal Employers' Liability
2 **Act—Surviving Dependent—Pecuniary Loss.** No liability arises under the Federal Employers' Liability Act for the death of an employee in the absence of the survival of a dependent, but great definiteness as to the actual pecuniary loss of the dependent will not be required.

PRINCIPLE APPLIED: The only next of kin surviving deceased and claiming dependency were a sister and her daughter. There was evidence that the deceased left $500 in life insurance to the daughter (his niece), and contributed from $5 to $6 a month to the support of his sister and niece; that he bought provisions for their table and bought dresses, dishes, curtains and furniture for them; that this probably amounted to $5 a month more than his board. Under the record, it was not clear whether the sister

testified that she expected future support from deceased, nor that she had heard him say that he expected to render support to herself and child. *Held*, sufficient to justify a recovery under the act in some amount.

**TRIAL:** Instructions—Failure to Request—Omission to Submit Ma-
3   terial Issue—Waiver. Failure to specifically request an instruc-
tion on a material issue, wholly omitted by the court, works no waiver of the right to object to such omission, especially where the complaining party had, at all prior stages of the proceedings, insisted on the materiality of the issue.

**MASTER AND SERVANT:** Contributory Negligence—Presumption
4   As To Condition of Railroad Track—Apparent Dangers. A rail-
way employee may properly assume that the railway track is reasonably free from overhead obstructions, and need not examine whether defendant has performed its duty; but if the obstructions are apparent, the employee must exercise reasonable care to avoid injury to himself.

*Appeal from Appanoose District Court.—*F. M. HUNTER, Judge.

FRIDAY, DECEMBER 17, 1915.

THIS is an action to recover damages for injuries result-ing in the death of plaintiff's intestate through the alleged negligence of the defendant company. There was a trial to a jury and a verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*J. L. Parrish, Robert J. Bannister, Porter & Greenleaf,* and *F. W. Sargent,* for appellant.

*Howell & Elgin,* and *Hubbell Brothers,* for appellee.

PRESTON, J.—On the part of plaintiff, it was claimed that the decedent was injured by being struck by the chunker timbers of a coal mine, which were so erected as to extend over the top of cars being moved on the switch serving the mine, and near enough above a car to strike a person standing on top of a car, unless he stooped down or stepped to one side of the car, while passing them. It was claimed by the plain-tiff that these timbers had been there long enough so that

the duty rested upon the defendant to remove them. It was claimed on the part of defendant that decedent was engaged in interstate commerce, and that the cause of action for his death, if any, was under the Federal act governing the liability of common carriers engaged in interstate commerce, and that deceased was guilty of contributory negligence which should reduce the amount of his recovery, if not entirely prevent a verdict in his favor. In plaintiff's second substituted petition, filed April 4, 1911, it is alleged, among other things, that:

"The death of Grover C. Adams was so caused by the said negligent acts of the defendant while the defendant, at the time and place aforesaid, was not engaging in commerce between the states, and while the defendant was not engaged in interstate commerce, and while the defendant was then and there engaged in moving and transporting said train and cars from Centerville, Iowa, to Eldon, Iowa, only, and while all of said cars were empty, and while said Adams was so employed by the defendant in transporting a train of empty cars from Centerville, Iowa, to Eldon, Iowa, only."

On April 7, 1911, defendant filed its answer thereto, denying the allegations not admitted; admitted that, about April 7, 1910, decedent was in the employ of defendant as a brakeman on a freight train, and, while so employed, he received injuries which caused his death; denied the allegations that defendant and deceased were not engaged in interstate commerce, but alleged that, at the time decedent received the injuries from which he died, he and defendant were engaged in the management, movement and control of engine and cars engaged in interstate commerce, and that deceased was engaged as an employee of the defendant in the control, movement and management of cars and engine intended and destined from points in Iowa to points in other states. On May 10, 1911, plaintiff amended his petition as Count 2 as follows:

"Comes now the plaintiff and, for amendment to his

petition and for the purpose of setting up an additional count, not waiving anything that has been stated in his second substituted petition, filed April 4, 1911, and for the purpose of varying his allegations for the purpose of conforming the pleadings to any phase of the proof and the law as the court may hold in the further progress of this suit, states as follows: Plaintiff here refers to the allegations of said second substituted petition and makes the same a part hereof with the same certainty and like effect as if herein fully set forth at length, except as the allegations of this count vary from' said substituted petition, as follows, to wit: for the purpose as aforesaid, plaintiff states that said transactions, as set forth in said substituted petition, were interstate commerce and governed by the laws of the United States.''

Plaintiff, having stated and set forth in the foregoing two counts the same transactions, with the inconsistent allegations as to the laws governing said transactions, here repeats his former prayer for judgment. Answering such amendment, defendant admitted that, at the time plaintiff's decedent received said injuries, he was engaged as an employee in interstate commerce, and that defendant's liability, if any exists in this case, is governed by the laws of the United States. The trial court held, as a matter of law, that decedent was not engaged in interstate commerce, and submitted the case to the jury as one coming under the statutes of Iowa governing such actions, instructing the jury that:

''The issues raised by the amendment to the petition filed by the plaintiff on May 10, 1911, and answer thereto filed by the defendant on May 12, 1911, are withdrawn from your consideration, as is also the evidence bearing exclusively upon said issues; and you are to determine this case solely upon the issues presented by the amended and substituted petition filed by the plaintiff on the 4th day of April, 1911, and the answer thereto filed by the defendant on the 7th day of April, 1911.''

At the close of plaintiff's testimony, the defendant moved

the court to require plaintiff to elect upon which one of the two counts in the petition he would ask a verdict, which was overruled. At the close of all the testimony, defendant moved for a directed verdict upon the first count of the petition, for the reason that the evidence shows that plaintiff's decedent, at the time of the accident, was engaged in interstate commerce, and to dismiss the second count of the petition, upon the ground that the court had no jurisdiction; because the only courts having jurisdiction of causes of action under the acts of Congress above referred to are the courts of the United States. By consent of plaintiff's counsel, defendant also moved for a directed verdict as to the second count of the plaintiff's petition, without waiving its motion to dismiss, on the ground that there is no evidence to show that anyone survived the deceased who comes within the class of persons for whom this action may be maintained, there being no showing of any dependent kin, and that there is no evidence to show that the persons for whose benefit this action was brought were damaged by reason of the death of the decedent, and that under no theory of the case could there be a verdict in favor of the plaintiff for more than nominal damages. These motions were overruled. The assignments of error are based upon the submission of the case to the jury as one under the Iowa statute, and the instructions in relation thereto, and the overruling of defendant's motion to dismiss and for a directed verdict and the instruction permitting a recovery of the damages suffered by the estate of decedent under the Iowa statute. In a subsequent or additional argument filed by defendant, further assignments of error are made, which are based upon the thought that the court erred in giving instructions 16 and 19, which authorized the jury to return a verdict for plaintiff even though they should find that decedent was guilty of contributory negligence, as provided by Chapter 124 of the Acts of the Thirty-third General Assembly (§ 2071, Code Sup., 1913).

1. We shall refer first to the question whether the court

erred in not submitting to the jury the question as to whether deceased and defendant were engaged in interstate commerce, defendant's claim being that the evidence

**1. MASTER AND SERVANT: the relation: statutory regulation: Federal Employers' Liability Act: "interstate commerce."**

and the record were such that the court should have held that deceased was so engaged, or at least that, under the evidence, it was a question for the jury. It will be remembered that, in the second count of the substituted petition, plaintiff claimed that the transaction was governed by the Federal Interstate Commerce Law, and this was admitted by defendant in its answer thereto. The court, by the instructions, submitted the case to the jury under the substituted petition and the answer of defendant, filed April 7, 1911. Defendant's answer, filed before plaintiff's amendment set out a second count, alleged that the transaction was under the Interstate Commerce Law. We think that, under the record and the evidence as now presented, the undisputed evidence and the allegations of the second count of the petition and defendant's answer thereto bring the case under the Federal statute, and that the court erred in withdrawing that issue from the jury. We shall refer to the evidence, without attempting to set out all of it, which we think shows that the case is one under the Interstate Commerce Act.

The following facts were established, or there was evidence from which the jury could have so found: That, on April 7, 1910, the date upon which decedent was killed, he was head brakeman on a freight train of the defendant company which ran from Eldon, Iowa, to Centerville, Iowa, and was there ordered to turn around and pick up a train of empties at Centerville and return to Eldon, taking what were known as foreign empties, or empties from other roads, in preference. When the train reached Centerville, it was put on one of the sidetracks, and the engine was then uncoupled and turned around and taken to the water tank: the tank was filled with water preparatory to its return trip to Eldon. They then started to assemble their train by switching it from

the sidetracks at Centerville. Ten cars were taken off what was known as the high track; they then ran the engine down on what is known as the center mine track, for the purpose of taking cars off that track.

We shall spend no time in setting out just how decedent was injured, because it is conceded in argument that, on the question of negligence, there was a jury question, and we understand defendant also to concede that such is the case on the question of contributory negligence, although defendant complains of one of the instructions on the last named proposition.

There were fifteen cars in this string of cars which the engine was pulling off the coal switch at the time decedent was killed. The "consist" of the train upon which deceased was working at the time he received the injuries, as appears from the conductor's train book, shows that, of the fifteen cars on the mine switch, eight were taken out of Centerville and hauled to Eldon on this train. Of these eight, the destination of one was St. Paul, Minnesota, and another Silvis, Illinois; but neither of these two was traced further than Eldon, and the same is true of another of these. The conductors and trainmen were brought and the records produced tracing one of the cars, a Southern Railway Company car, from one of the eastern terminals of the line at Joliet, Illinois, to Lineville, Iowa, a station beyond Centerville, with a load of machinery. Here it started back on its return trip. It first went to Centerville with a few cases of eggs and thence, via the train on which decedent was working, back to Joliet, where it was received. Each of the other four cars was identified and traced back by means of the conductors who hauled them and the records showing their movement from Centerville, Iowa, to Joliet, to Blue Island, or Burr Oak, Illinois, the end of the division of the appellant's line on the Chicago Belt Line or Terminal Railroad. One of these four was a Kanawah & Michigan Car, No. 1318. It was on the mine switch and is the car on which deceased was at the time that he was

injured. The destination of this car was Joliet, Illinois. It was taken from Eldon, Iowa, to Silvis, Illinois, starting at 9 o'clock P. M. on April 7, 1910, and arriving at Silvis on April 8, 1910, at 10 o'clock A. M. This train left Silvis on April 9th, at 8:20 P. M., and arrived at Blue Island, which is beyond Joliet, on April 10th, leaving the car at Joliet en route. Other cars of the 15 on the mine switch at the time deceased was hurt are shown to have been taken from Centerville to other states. We shall not set out the evidence further as to them. It was while switching these freight cars, preparatory to starting them on their journey back to their points of origin, that deceased was injured. Plaintiff's work at the time that he was injured was so closely related to interstate commerce as to be, in practice and in legal contemplation, a part of it.

Many of the cases are reviewed in the recent case of *Armbruster v. Chicago, R. I. & P. R. Co.*, 166 Iowa 155, 173. See also, *Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1; *Behrens v. Illinois C. R. Co.*, (La.) 192 Fed. 581; *Johnson v. Great Northern R. Co.*, (Minn.) 178 Fed. 643; *Graber v. Duluth, S. S. & A. R. Co.*, (Wis.) 150 N. W. 489; *Otos v. Great Northern R. Co.*, (Minn.) 150 N. W. 922; Roberts, Injuries to Interstate Employees, pp. 68, 133.

2. It is next contended by defendant that the court erred in overruling defendant's motion to direct the jury to return a verdict in favor of defendant upon Count 2 of plaintiff's

2. **MASTER AND SERVANT: actions: Federal Employers' Liability Act: surviving defendant: pecuniary loss.**

amended and substituted petition, and in overruling the motion for new trial, because there was no competent evidence of damage suffered by the plaintiff or anyone for whom he was suing. It appears in the record that deceased was 26 years of age and unmarried. His parents were not living: he had been an orphan since 12 years of age. He left a brother and a sister; also a niece, Myrtle Phillips, a daughter of his sister, Rosetta Phillips. He left a life insurance policy

of $500 to this niece.    The sister, Rosetta Phillips, testified
that deceased contributed $5 or $6 a month to the support of
herself and daughter; that he bought provisions for her table,
dresses, dishes, curtains and furniture, and that such pay-
ments were probably $5 a month more than his board.    There
is some confusion in the record as to whether she testified that
she expected support from him and that she had heard him
say that he expected to give financial support to her and the
child.    As said in *McCoullough v. Chicago, R. I. & P. R. Co.,*
160 Iowa 524, 530:

"In the nature of the case, evidence cannot be very
definite as to the actual amount of the pecuniary loss sus-
tained in such a case."

But we think that the evidence we have set out is a suffi-
cient basis for the recovery of damages in some amount for
the benefit of the sister and niece.    We have set out the second
count of the petition, and it is doubtful whether the pleading
covers this point.    But no question has been raised; so far as
we are able to see, by the defendant as to whether the fact
being now considered has been pleaded.    And in some cases,
as we understand it, the verdict should apportion the damages
between the different claimants, if more than one.    But no
point is made on this proposition by the defendant.

Appellant, by its answer, its motion to direct a verdict,
exceptions to the instructions and motion in arrest of judg-
ment and for a new trial, called the trial court's attention
to the interstate commerce feature of the case
3. TRIAL: instruc-
tions: failure to    and to the error in submitting the case under
request: omis-
sion to submit    the state law.    It will be observed that the
material issue:
waiver.    second count of the petition alleged that it
was an interstate commerce transaction, and this was admitted
by the defendant in its answer thereto; and in its answer to
the first count of the petition, the defendant tendered the
interstate commerce issue, and, as we have seen, there was
evidence in its support.    But it is said by plaintiff that, because

defendant did not tender or request any instruction submitting any interstate commerce issue to the jury, the defendant thereby waived the right to go to the jury on that issue. This is the rule in some cases and as to some issues; but in this case the court not only did not instruct at all as to the second count of the petition, but directed the jury to disregard that count. This being so, it would appear to be a useless proceeding for the defendant to request instructions on an issue that the court had withdrawn from the jury, or that it did withdraw in its own instructions. Suppose that the trial court had given no instructions on either count of the petition and none had been asked by either side, it certainly could not be claimed that the jury were properly instructed as to the issues in the case. It is the duty of the court to instruct the jury upon the questions of law in the case. *Hall v. Town of Manson,* 90 Iowa 585, 590; *Erb v. German·American Ins. Co.,* 112 Iowa ·357; *Overhouser v. American Cereal Co.,* 128 Iowa 580.

4. Instruction No. 12 bears upon the question of the contributory negligence of deceased and the duty of defendant to keep the sidetrack clear of overhead obstructions, and upon

4. MASTER AND SERVANT: contributory negligence: presumption as to condition of railroad track: apparent dangers.

the fact that deceased had a right to assume and rely upon the assumption in his work that the track was reasonably free from overhead obstructions, and that, if deceased did not have ·knowledge that the timbers were above the track, he was not required to see nor examine whether defendant had performed its duty. We think that the part of the instruction complained of means no more than this. The jury was told in the same instruction that, if the deceased knew of the obstruction complained of, if it was such, then he was bound to exercise reasonable care and diligence to avoid being struck. We think that the instruction is in line with the authorities that, if deceased did not know of the timbers over the car or track, he had a right to assume

that no such obstruction was there, and that he would not be negligent in performing his work unless the obstruction was apparent. *Melody v. Des Moines U. R. Co.*, 161 Iowa 695; *Scott v. Chicago, R. I. & P. R. Co.*, 160 Iowa 306; *Kroeger v. Marsh Bridge Co.*, 138 Iowa 376.

We have had some difficulty in arriving at the true situation. At the time of the trial in the district court, the questions were new. The attorneys for each side seem to have had some doubt as to how to proceed at some points. There have been ten separate filings of printed matter and a certification of the evidence.

For the reasons given, the judgment is reversed and the cause remanded for a retrial and further proceedings in harmony with this opinion.—*Reversed* and *Remanded*.

DEEMER, C. J., WEAVER and EVANS, JJ., concur.