[Civil No. 2006. Filed May 26, 1922.]

[207 Pac. 66.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Appellant, v. J. O. HOPKINS, as Administrator of the Estate of ROY JAMES SHOMBER, Deceased, Appellee.

1. DEATH—DAMAGES UNDER FEDERAL ACT MEASURED BY LOSS OF EXPECTED PECUNIARY BENEFITS.—Federal Employers' Liability Act of April 22, 1908 (U. S. Comp. Stats., §§ 8657–8665), section 1, was enacted to provide for the making of compensation by way of damages to the members of the classes mentioned for the pecuniary loss caused by the wrongful death of an employee, and such damages are measured by the benefits of which they have been deprived, being such pecuniary assistance or support as they might reasonably have expected to receive had the employee lived.

2. DEATH—RECOVERY MAY BE BASED ON MORAL OBLIGATION TO SUPPORT.—Recovery for death under the federal Employers' Liability Act of April 22, 1908, section 1 (U. S. Comp. Stats., § 8657), for the benefit of defendants, may be founded upon a merely moral obligation resting upon decedent to render pecuniary aid or support as distinguished from a legal duty so to do.

3. DEATH—"DEPENDENT" WITHIN FEDERAL EMPLOYERS' LIABILITY ACT DEFINED.—To authorize recovery for death under federal Employers' Liability Act of April 22, 1908 (U. S. Comp. Stats.,

---

On constitutionality, application and effect of federal Employers' Liability Act, see notes in 17 Ann. Cas. 331; 47 L. R. A. (N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 47.

Damages recoverable under federal Employers' Liability Act, notes, Ann. Cas. 1914C, 181; Ann. Cas. 1915D, 319.

§§ 8657–8665), for the benefit of next of kin "dependent" on the deceased, a showing of partial dependency for support is sufficient, but the circumstances must show some disability or incapacity coupled with lack of property means from which arises a need for support with a recognition of that need by the deceased either by actual contributions or a fixed purpose to render such contributions to the extent that there existed a reasonable expectation of the derivation of pecuniary benefits from the continuance of the life of the deceased.

4. DEATH — FINDING OF "DEPENDENCY" WITHIN FEDERAL ACT SUSTAINED.—In an action for death under the federal Employers' Liability Act of April 22, 1908, section 1 (U. S. Comp. Stats., § 8657), for the benefit of decedent's minor brothers and sisters, the dependent next of kin, evidence of a necessitous want on their part, contributions actually made for their support, and expressions of purpose to continue such contributions *held* to justify a finding of dependency within the act.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

### STATEMENT OF FACTS.

This action was brought by J. O. Hopkins, as administrator of the estate of Roy James Shomber, deceased, against the appellant railroad company under the provisions of the act of Congress commonly known and referred to as the federal Employers' Liability Act of April 22, 1908 (35 Stat. 65; U. S. Comp. Stats., §§ 8657–8665; 8 Fed. Stats. Ann., pp. 1339–1378), to recover the damages sustained by the dependent next of kin by reason of the death of the decedent. Upon the trial it was stipulated that the decedent came to his death on July 9, 1920, while in the employ of the appellant company, as a brakeman, in the operation of a train of cars engaged in an interstate shipment of freight, and that his death occurred under such circumstances "as will authorize his administrator, the plaintiff in this action, to recover a judgment against the defendant company, if the evidence discloses that said deceased left next of kin

dependent upon him as alleged in the complaint. It is understood that defendant does not admit that deceased left any next of kin dependent upon him, that fact being a matter in issue under the pleadings.''

Upon the issue thus made the parties went to trial to a jury, which returned a verdict in favor of the plaintiff. From the judgment entered on such verdict, this appeal is taken.

The contentions of the appellant are based upon the asserted insufficiency of the evidence to support the judgment, and a somewhat full statement of the testimony is required in order to present the questions for decision.

At the time of his death the decedent was eighteen years of age, and unmarried. His father had died in October, 1919, and his mother in March, 1920. For four or five years prior to his death decedent had been out of school, during which time he was working, and was practically self-supporting. The testimony discloses that he was a steady boy, of good habits, a good worker, fully developed, and in good physical condition. About two years prior to his death he had been employed by the appellant as a freight trucker at Walton, Kansas, and as car sealer and yard switchman at Ash Fork, Arizona, and later as brakeman between Ash Fork and Phoenix. After his father's death his mother asked him to come to Walton. In response to this request, and about March 1, 1920, he obtained a leave of absence and went to Walton for the purpose of assisting his mother, and helping her to care for his four minor brothers and sisters, by continuing his father's business of driving a truck between Newton and Walton, expecting to return to his railroad employment in Ash Fork "if he could not make it go" in Walton. At decedent's death the Shomber family consisted of the following members, brothers and sisters: Clarence, aged thirty-one, living

in Boston with his wife; Ernest D., aged twenty-nine, who had married about eight years before, and was residing at Blythe, California; Ethel Hopkins, wife of the appellee, Hopkins, a telegraph operator, who had been married five years, and was living at Ash Fork, Arizona, with her husband and two young children; Ruby, a trained nurse aged twenty-two years, who had married after her mother's death; Ada Egbert, who had been married for more than three years, and who had been living at home with her mother. Then followed, in the order of age, after the deceased; Roy James Shomber, the four minor brothers and sisters, beneficiaries herein: Lawrence William, aged fifteen years, Frank Henry, aged thirteen years, Nora Ann, aged eleven years, and Zena, aged eight years.

Following the funeral of Mrs. Shomber, which was attended by appellee and all the Shomber children, excepting Clarence, the disposition to be made of the four younger children was discussed by the deceased with his brother Ernest and the appellee, in the presence of Lawrence. Arrangements were made whereby the appellee and his wife took Nora with them to Ash Fork, Ernest took Frank and Zena to Blythe, and Lawrence remained at Walton, where he has since lived with his sister, Mrs. Egbert, who remained in the old family home. During the conversation referred to Roy expressed his intention of returning to Prescott to resume his railroad employment as soon as he could obtain transportation, and to assist the others financially in taking care of the children, and stated to Mrs. Hopkins that "he was satisfied that he could help us to the extent of at least $25 a month for each of the children, and agreed to contribute what he could, which he thought would be" the amount mentioned. The deceased remained at Walton until May 1st, reached Ash Fork May 3d, and resumed his railroad employment on May 6th, con-

tinuing in such work until he was killed on July 9th following. His earnings during this period of sixty-four days aggregated $414.33, of which amount $75.60 was "back pay" adjustment, earned but not drawn during his life. Of $173.87 earned for the month of May he had been paid $143.33, and of $173.52 for the month of June he had received $141.28, a total of $284.61.

Before resuming his railroad work the deceased had some further discussion with the appellee and Mrs. Hopkins regarding the four children, concerning which appellee testified:

"He came into my office the night before he left Ash Fork, inquired how Nora was getting along, and said he was going to work, and just as soon as he got straightened out he would start in to send us money and help take care of them."

Mrs. Hopkins testified:

"He said he wanted Nora and the children (mentioning Nora especially, because she was with me) to have a good education, something he hadn't had, and was willing to sacrifice himself so that they might have an education."

During the month of June he paid the appellee $25 on Nora's account and gave Nora $2 in cash, some candy and shoes. During the same month he sent Lawrence $20 in cash. The testimony further shows that to various witnesses the deceased repeatedly stated that it was his intention to assist his dependent brothers and sisters in a pecuniary way. As we have indicated, the testimony fairly shows that the placing of the children with the various sisters and brothers was in pursuance of the agreement of the parties to provide for the support of the children, to aid in the accomplishment of which the promise of deceased was made.

The objections made raise the questions whether any of the minor children were in fact dependent upon the deceased at the time of his death, within the meaning of the act of Congress, and whether such evidence justifies a finding that any of the beneficiaries in whose behalf damages were awarded sustained any actual pecuniary loss through the death of the deceased. The amount awarded was by the jury apportioned amongst the minor children as follows: Lawrence William Shomber, aged fifteen, $540; Frank Henry Shomber, aged thirteen, $900; Nora Ann Shomber, aged eleven, $1,260; Zena Shomber, aged eight, $1,800; a total of $4,500.

Mr. Paul Burks, Messrs. Norris & Norris, and Messrs. Chalmers, Stahl, Fennemore & Longan, for Appellant.

Messrs. O'Sullivan & Morgan, for Appellee.

FLANIGAN, J. (After Stating the Facts as Above.)—The decision of the case calls for a construction of Act Cong. April 22, 1908, 35 Stat. 65, c. 149, commonly known as the Employers' Liability Act (U. S. Comp. Stats., §§ 8657–8665; 8 Fed. Stats. Ann., pp. 1339–1378), to determine whether the four minor children may properly be said to be "next of kin dependent upon such employee," within the meaning of the act, of which the part pertinent to this case is section 1 (section 8657), reading as follows:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of

such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.''

In *Michigan Central R. Co.* v. *Vreeland,* 227 U. S. 59, Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192 (see, also, Rose's U. S. Notes), which was an action brought by the administrator for the benefit of the surviving widow of decedent, the court, speaking of the nature of the liability under this act, said:

''The obvious purpose of Congress was to save a right of action to certain relatives dependent upon an employee wrongfully injured, for the loss and damage resulting to them financially by reason of the wrongful death. . . . This cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had—one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them and for that only.''

*American R. Co. of Porto Rico* v. *Didricksen,* 227 U. S. 145, 57 L. Ed. 456, 33 Sup. Ct. Rep. 224 (see, also, Rose's U. S. Notes), was an action brought by the administrator for the benefit of the parents, and the court said:

''But the act, in case of the death of such an employee from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable

are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained."

To the same effect are the decisions in *Gulf, Colo. & S. F. R. Co.* v. *McGinnis*, 228 U. S. 173, 57 L. Ed. 785, 33 Sup. Ct. Rep. 426, and *Garrett* v. *Louisville, N. R. Co.*, 235 U. S. 308, 59 L. Ed. 242, 35 Sup. Ct. Rep. 32 (see, also, Rose's U. S. Notes).

From these decisions it appears that—

The damages allowed "are such as flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries. The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived." *Michigan Cent. R. Co.* v. *Vreeland, supra.*

See, also, *Dooley* v. *Seaboard Air Line R. Co.*, 163 N. C. 454, L. R. A. 1916E, 185, 79 S. E. 970, *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Collard's Admr.*, 170 Ky. 239, L. R. A. 1918E, 273, 185 S. W. 1108, and *Moffett* v. *B. & O. R. Co.*, 220 Fed. 39, 135 C. C. A. 607.

The construction of the act in the cases cited leaves no room to doubt that the statute was enacted to provide for the making of compensation by way of damages to the members of the classes mentioned for the pecuniary loss they may suffer by the wrongful death of the employee, and that such damages are measured by the benefits of which they have been deprived, being such pecuniary assistance or support as they might reasonably have expected to receive had the employee lived. And it would simply be an attempt to demonstrate what is obvious to argue the

patent proposition that such expectation entertained by certain of the persons in the classes mentioned as surviving parents or collateral heirs, husband or adult children, may be founded upon a merely moral obligation resting upon the decedent to render such aid, as distinguished from a legal duty so to do. See *Michigan Cent. R. Co.* v. *Vreeland, Dooley* v. *Seaboard Air Line R. Co. supra,* and *Seaboard Air Line* v. *Kenney,* 240 U. S. 489, 60 L. Ed. 762, 36 Sup. Ct. Rep. 458 (see, also, Rose's U. S. Notes).

So, if in this case it appears that at the time of the decedent's death there existed the required relationship with dependency on the part of the surviving relatives, and a reasonable expectation that the decedent would fulfill the purely moral obligations arising out of such conditions to support his kinsfolk, recovery may be had accordingly.

No question is made as to the existence of the required relationship of the minor children named, but the controversy arises as to the meaning of the term "dependent," it being asserted by appellant that the minor children were not in fact such dependents under the terms of the act of Congress, and strenuously insisted:

"That within the purview of the act such condition of dependency is not established by the showing of a voluntary unexecuted oral promise, prompted by fraternal instincts on the part of the deceased, to make future contributions to the extent of his ability towards the education and support of such children, even though such promise was followed by occasional gifts or contributions."

However varying may be the connotations of the term "dependent" in different relations of contract or status, we think that for the purpose of this case it is sufficient to point out that there is denoted in the legal and customary use of the term the idea of the

sustaining or support of one person by another, or the reliance by one upon another either wholly or partially for support. It has been said that, generally speaking, a dependent is one who is sustained by another, or relies for support upon the aid of another. *Murphy* v. *Nowak*, 223 Ill. 301, 7 L. R. A. (N. S.) 393, 79 N. E. 112.

In *Keller* v. *Industrial Commission*, 291 Ill. 314, 126 N. E. 162, a dependent is defined as follows:

"In law, a 'dependent' is one who is sustained by another or relies for support upon the aid of another; who looks to another for support and relies upon another for reasonable necessaries consistent with the dependent's position in life."

It seems to be settled that, under compensatory and beneficiary provisions of law or contract in favor of dependents, generally speaking, it is not contemplated or required thereby that an entire dependency exist, but it will be sufficient if the need is partial, if it is a substantial need. *McCarthy* v. *New England Order of Protection*, 153 Mass. 314, 25 Am. St. Rep. 637, 11 L. R. A. 144, 26 N. E. 866. For cases under the act in question, see *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Collard's Admr.*, *supra; Dooley* v. *Seaboard Air Line R. Co.*, *supra; Moffett* v. *B. & O. R. Co.*, *supra.* See, also, *Bruckshaw* v. *Chicago, R. I. & P. Co.*, 173 Iowa, 207, 155 N. W. 273, and *Richelieu* v. *Union Pac. R. Co.*, 97 Neb. 360, 149 N. W. 772, in both of which cases recovery was allowed under the Employers' Liability Act upon a showing of partial dependency; in the Richelieu case, in behalf of a sister, and in the Bruckshaw case in behalf of a sister and a niece.

The meaning of the term "dependent" as it is used in the Employers' Liability Act was very fully considered in *Southern R. Co.* v. *Vessell*, 192 Ala. 440, Ann. Cas. 1917D, 892, 68 South. 336, which was an action brought under the Employers' Liability Act

for the benefit of a sister of the decedent. The court in that case followed the decision in *Bortle* v. *Northern Pac. R. Co.,* 60 Wash. 554, Ann. Cas. 1912B, 732, 111 Pac. 789, which construed a statute of the state of Washington, and applied the construction made in the Bortle case to the federal act. Although the decision was adverse to the claim made on behalf of the sister, we think the language quoted with approval from *Duval* v. *Hunt,* 34 Fla. 85, 15 South. 876, quite clearly states the rule to be followed:

"We think that, when the suit is brought by a person who bases his right to recover upon the fact that he is a dependent upon the deceased for support, then he must show, regardless of any ties of relationship or strict legal right to such support, that he or she was, either from the disability of age, or nonage, physical or mental incapacity, coupled with the lack of property means, dependent in fact upon the deceased for support. There must be, when adults claim such dependence, an actual inability to support themselves, and an actual dependence upon someone else for support, coupled with a reasonable expectation of support, or with some reasonable claim to support from the deceased."

The circumstances must show some disability 'or incapacity of the character referred to, from which arises a need for support on the part of the next of kin, with a recognition of that need by the deceased, to the extent that there existed a reasonable expectation of the derivation 'of pecuniary benefits from the continuance of the life of the decedent. In fine, the question in this case is: Was there a necessitous want on the part of these minor children for support, and was this want recognized by the decedent either by actual financial contributions or by fixed purpose to render such contributions, so that it could be said there was a reasonable expectation that such assistance would have been given had he lived?

24 Ariz.—8

In the application of this rule to the case here we may remark that the facts shown distinguish it broadly from the Bortle and Vessell cases, and in some respects from all other cases that have been cited to us or that we have found. The decedent, very shortly after recognizing the actual need of his minor brothers and sisters for substantial aid and support, and after promising to assume the responsibility of contributing to such support, came to his death within the short space of sixty-four days after taking up a lucrative employment. In addition to this, at the family conference held át the time of the mother's funeral the promise of the deceased was made in effect to those who, like himself, were under an obligation to take care of these children, and, from the moral standpoint, at least, the 'other brothers and sisters, performing the duties they had assumed under the dictates of fraternal affection, were entitled to rely upon decedent's help in accordance with his undertaking. It is not to be doubted that there existed a condition of necessitous want on the part of such minors. This need was recognized by the decedent and the other members of the family, who took upon themselves the obligation of providing therefor. Decedent did in fact begin to fulfill his promise by making actual contributions in money. That such contributions were not made regularly or punctually at stated times does not seem to us to be of controlling importance. If a longer time had elapsed before his death, during which remittances had been made by him at irregular intervals, or not at all, or, on the other hand, he had fulfilled his promise, it could, of course, be more definitely known in what measure he intended to respond to the obligations of his fraternal relationship. But, as the case had necessarily to be decided on the facts arising during the short time the decedent lived, it appears to us that the circumstances under which the promise was given, the contributions

actually made soon afterwards, and decedent's expressions of purpose to continue them might well justify a jury in finding that in all reasonable probability the deceased would continue to respond to the moral obligations he had recognized and assumed.

It is thus seen that we cannot accede to the appellant's contention that a mere unexecuted oral promise, not confirmed or carried out by actual contribution, is without value as showing dependency within the meaning of the act. Bearing in mind that the purpose of the statute, under the authorities cited, is to provide for compensation by the wrongdoer to those who had a reasonable expectation of pecuniary benefit in the continuance of the life of the deceased, and that a condition of dependency may be inferred from a necessitous want on the part of the next of kin, with a recognition of that want on the part of the employee and his purpose to contribute substantially to relieve the need, we cannot hold that the jury was not warranted in finding that a pecuniary loss was actually suffered by the minor heirs, including those to whom no contributions had actually been made.

In appellant's reply brief exception is taken to the statement in the brief of appellee that the minor children upon the death of the mother were left without estate or means of support, wherefrom, with other premises, appellee deduced the conclusion that the evidence was legally sufficient to justify the finding of dependency. Appellant asserts that no evidence was introduced to the effect that the four minors were without estate. While the assignments of error raise the broad question of the sufficiency of the evidence to establish dependency, no specific point was made nor argument offered in connection therewith that the evidence was insufficient for lack of a showing in the respect mentioned. But, were the matter open for determination under the assignments of error, we

should not be inclined to hold that the evidence was insufficient to establish that the minor children were in fact without means of support because they had property of their own. The evidence is consistent only with the conclusion that these children were without means excepting such as might be supplied to them by their elder brothers and sisters, who actually took this duty upon themselves.

In this state of the record we think it would be unfair to the appellee to accord the proposition the weight which might properly have been given to it had the question been made, relied upon, and presented in both courts.

For the reasons we have given, the judgment must be affirmed.

ROSS, C. J., and McALISTER, J., concur.