**PITTSBURGH NATIONAL BANK, Administrator of the Estate of Clifford B. Waltham, Deceased, Appellant,**

v.

**The PENNSYLVANIA RAILROAD COMPANY.**

No. 14022.

United States Court of Appeals Third Circuit.

Argued Dec. 7, 1962.

Decided April 2, 1963.

As Amended April 25, 1963.

---

Jerry Burton Landis, Pittsburgh, Pa. (George S. Goldstein, Pittsburgh, Pa., on the brief), for appellant.

Judd N. Poffinberger, Jr., Pittsburgh, Pa. (J. C. Swaim, Jr., Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, STALEY, Circuit Judge, and LEAHY, District Judge.

BIGGS, Chief Judge.

This is an appeal by the plaintiff from an adverse judgment of the court below sitting without a jury. Pittsburgh National Bank brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the Safety Appliance Act, 45 U.S.C.A. §§ 1–23, seeking damages for the death of Clifford B. Waltham, an employee of the Railroad, on behalf of Ivor R. Waltham, an adult brother of the deceased who claims to be a "next of kin dependent" on the dead man. The court below concluded as a matter of law that Ivor was not a dependent of Clifford and that no act of negligence of the Railroad contributed either in whole or in part to Clifford's death. It follows, of course, that if either of these conclusions be correct, the judgment must be affirmed.

As to Ivor it is clear that Section 1 of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, gives a right of action to the "surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin" as set out in the statute quoted below.[1] Since the trial court made an uncontested finding that the decedent, Clifford, was unmarried and had no surviving parents, the only class remaining for whose benefit the suit could be maintained is that comprising the next of kin dependent on him. It is conceded that Ivor was Clifford's brother. But Ivor must be shown to have been dependent on Clifford. See Poff v. Pennsylvania R. Co., 327 U.S. 399, 401, 66 S.Ct. 603, 90 L.Ed. 749 (1948); Wade v. Rogala, 270 F.2d 280, 283–284 (3 Cir., 1959). If he was not dependent, the personal representative, the Bank, cannot maintain the action at bar since there is no beneficiary for whose benefit the suit can be maintained. Lindgren v. United States, 281 U.S. 38, 41, 50 S.Ct. 207, 74 L.Ed. 686 (1930). The first issue that we must determine, therefore, is whether Ivor was depend-

---

1. Section 1 states in part:
   "[I]n case of the death of [an employee of a common carrier by railroad, the railroad shall be liable] * * * to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such * * * death resulting in whole or in part from * * * negligence."

ent on Clifford within the meaning of the Act.[2]

A statement of the facts offered to show Ivor's dependency is necessary. There is we think no substantial disagreement as to them. The dispute arises in respect to their interpretation. The record shows that Ivor was sickly, apparently from birth, suffering with bronchietasis and asthma and that he possessed few financial resources, having had to give up positions from time to time which required him to work outdoors. From January 1957 until November 27, 1959, the date of Clifford's death, the brothers' relationship was close and friendly. Clifford, who was unmarried and had no children, lived in Pittsburgh, while Ivor maintained a home in Chicago. In January 1957 Clifford gave Ivor $50 to pay a Sears-Roebuck bill and $75.00 in cash and insisted that Ivor must further his education by studying at the night school at the University of Chicago, agreeing to pay the tuition for those studies or the sum of $50 a month to commence in November 1957. In May of that year Clifford began to pay Ivor $20 a month for a room to be maintained in Ivor's home for the former's convenience when he was in the City. From November 1957 to October 1959 Clifford sent Ivor $70 a month, apparently $50 from this first pay check and $20 out of his second pay. Clifford continued to do this even though Ivor found it difficult and later impossible to continue his studies at the University. Clifford told Ivor that regardless of the state of his capacity to continue his studies he would continue to give him $70 a month so long as he lived and that Ivor could rely on this. The foregoing statements are supported by substantial evidence and seem to be uncontradicted.

The following also appears principally from Ivor's testimony, largely from cross-examination. He was employed by United Airlines from September of 1956 until October of 1959. At this time he was earning a gross salary of approximately $390 a month. According to the records of the Chicago Rock Island Railroad Ivor was put on that company's payroll as an employee on October 19, 1959. He was on that date employed as a temporary transportation clerk. The rate of pay for this particular job was $438.59 a month. On November 19, 1959, eight days before Clifford's death, Ivor was replaced by the regular transportation clerk who returned from a leave of absence. Ivor was then assigned to the job of relief roundhouse clerk. He began work in this capacity on December 8, 1959, although the records of the Rock Island Railroad show that he was assigned to the job on November 28, 1959. The reason that he did not appear sooner for work does not appear. It follows that from November 19, 1959 to December 8, 1959, Ivor had no employment. During this period, on November 27, 1959, Clifford, as we have stated, died.

■ The rights of the parties must be determined by the federal statutes and the law as interpreted and applied by the United States Courts. Chesapeake & Ohio Ry. Co. v. Kuhn, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157 (1931). Ricketts v. Pennsylvania R. Co., 153 F.2d 757, 164 A.L.R. 387 (2 Cir., 1946); Briggs v. Pennsylvania R. Co., id., 841, 163 A.L.R. 1281 (2 Cir., 1946). Unfortunately there is no clearly defined federal law or decisions which serve to define the word "dependent" as employed in the statute. The word is not defined in the Act. We therefore must look to the general decisional law to determine its meaning. In its most common usage a " 'dependent' is one who is sustained by another, or relies for support upon the aid of another." Atchison, T. & S. F. Ry. Co. v. Hopkins, 24 Ariz. 103, 207 P. 66, 69 (1922). The reliance need not be total,

2. The claim is one for death. If dependence exists no question of jurisdiction is presented. Cf. Wade v. Rogala, 270 F. 2d 280 (3 Cir., 1959). See the statement of Judge Kalodner, id., at p. 284:

"[T]here is a fundamental distinction for failure to state a claim upon which relief can be granted and for lack of jurisdiction."

dependency can exist even if support be only partial. Richelieu v. Union Pac. R. Co., 97 Neb. 360, 149 N.W. 772 (1914). It is comparatively easy to determine dependency when full financial assistance is given to relieve complete need. But when financial assistance is partial, difficult problems arise. The decisions involving the scope and meaning of the term "dependent" when support is partial are rare and have arisen in various jurisdictions. It is expedient to review the cases that we have been able to find and which have been cited to us on this point.

On a review of these decisions two distinct lines of cases appear. One group deals with the determination of damages and the other with the meaning of the word dependent. Because of the confusion which may result from reading these cases together we will review each group separately.

In Southern Railroad Co. v. Neese, 216 F.2d 772 (4 Cir., 1954), a railroad employee's parents testified that he always gave his full pay check to his father and told the latter to use it as he pleased; that during the three years he had worked for the Railroad he had contributed at least $30 to $40 a month to the family and at the last had contributed as much as $70 per month. He had also purchased household furnishings and two radios for the family home. The employee had expressed a desire never to marry and his mother testified that she expected the decedent to contribute as much as $2500 a year to her support after the retirement of his father who at the time of the employee's death was receiving $4300 a year as a car inspector for the Railroad. The issue was solely one of damages.[3] The Court held that there was not sufficient proof of damage but was reversed on the issue of damages in Neese v. Southern Railway Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955).

In Michigan Central R. R. v. Vreeland, 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913), the Supreme Court, ruling on the issue of damages, stated, "The pecuniary loss is not dependent on any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived." This pronouncement by the Supreme Court is not pertinent here for the circumstances were such as to not bring into play possible beneficiaries lying within the third category of the statute. In this case the Court indicated what damages are recoverable once the issue of dependency has been established.

In Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 427, 57 L.Ed. 785 (1913), the Supreme Court ruled that there must be a reasonable expectation of pecuniary benefit. In that case the decedent employee left a widow and four children. The suit was brought by the widow as administratrix for herself and the four children named in the petition. One of the latter, Mrs. Saunders, was a married woman residing with and maintained by her husband. There was no allegation or evidence that this asserted beneficiary was in any way dependent upon the decedent or that she had any reasonable expectation of pecuniary benefit as a result of a continuation of the decedent's life. The trial court had been requested to instruct the jury that it could not find any damage in favor of Mrs. Saunders but the court declined to do this and instructed the jury that if they found for the plaintiff, the administratrix, to return a verdict for such a sum as would justly compensate the persons for whose benefit the suit was brought for such pecuniary benefits as they might believe from the evidence the beneficiaries had a reasonable expectation of receiving from the

3. In the case of parents it is unnecessary specifically to prove dependency, parents being in the second category of the statute. Proof of dependency must be made only in the third category of the statute.

See Section 1 of the Act, 45 U.S.C.A. § 51, quoted in note 1, supra, and Wade v. Rogala, 270 F.2d 280, 283–284 (3 Cir., 1959).

decedent, if his death had not been so occasioned in the course of his employment. The jury was further instructed to find a "round sum in favor of the plaintiff, and then apportion that sum among all the persons for whom the suit had been brought, stating in their verdict, 'how much, if anything, you find for each of said persons.'" The jury returned a verdict for $15,000 and apportioned it, one-half to the widow, and the remainder equally among the four children, including Mrs. Saunders. The Supreme Court pointed out that the statutory action of the administratrix is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought and that though a judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss, and that this will "of course, exclude any recovery in behalf of such as show no pecuniary loss."

In Bruckshaw v. Chicago, R. I. & P. Ry. Co., 173 Iowa 207, 155 N.W. 273 (1915), Bruckshaw, the deceased, a 26-year-old bachelor, left surviving him a brother, a sister, and a niece, the daughter of his sister. There was evidence that Bruckshaw had contributed $5 or $6 a month directly to the support of his sister and her daughter and indirectly provided support, by the process of purchasing food, clothing, and household furnishings, at the rate of approximately an additional $5 per month. There is no indication in the opinion of the Supreme Court of Nebraska that the sister had any other means of support. The question before the Court in the cited case was not one of dependency but was in fact one of the extent of the damages. The Court ruled that, "[W]e think that the evidence * * * set out is a sufficient basis for the recovery of damages in some amount for the benefit of the sister and niece." See 155 N.W. supra, at p. 276.

An examination of these cases reveals that they deal with a determination of damages. But, before the question of damages can be determined it must appear that the person for whose benefit the action is brought is in fact a beneficiary under the Act. Therefore, these cases cannot be employed in attempting to resolve the meaning of the word "dependent" as used in the Act. The second group of cases to which we have been referred are more helpful.

In Richelieu v. Union Pac. R. Co., supra, suit was brought for the benefit of Charlotte, the sister of the deceased employee, Harry Richelieu. At the time of Harry's death, Charlotte owned the old family house and also had about $5,000. She collected about $30 a month rent on the house and from this she paid the expenses of upkeep and maintenance on the building. She was also employed and earned $9.00 a week at the time her brother died. Harry had given his sister $30 to $40 a month and had also paid her board. In finding that Charlotte was a dependent for whose benefit the action could be maintained, the Supreme Court of Nebraska stated, "That her brother gave her substantial assistance is apparent from this testimony. * * * She was dependent upon the assistance of her brother, although not without means." See 149 N.W., supra, at p. 775.

The decision in Southern Ry. Co. v. Vessell, 192 Ala. 440, 68 So. 336 (1915), presents a variation in the doctrine of partial support. The suit was brought for the benefit of a sister and a nephew of the railroad employee who claimed to be dependents. There was evidence to show that the employee had made monthly contributions for a two-year period prior to his death for the benefit of his sister and his nephew. But the evidence also demonstrated that the sister's husband was employed and that his earnings were sufficient to take care of his family. In finding that neither the sister nor nephew were dependents, the Supreme Court of Alabama stated, "Had the statute intended to provide for a relative * * * whom [the employee] was merely assisting, as distinguished from a 'dependent,' it would no doubt have been framed so as to include such persons as beneficiaries, but, worded as it is, it can

include no one in the third class who was not a 'dependent' upon the deceased at the time of his death for substantial, if not entire, support." See 68 So. supra, at p. 338.

In Atchison, T. & S. F. Ry. Co. v. Hopkins, supra, Hopkins, the deceased railroad employee, was 18 years of age and unmarried at the time of his death. After his parents' deaths his minor brothers and sisters resided with his older brothers or sisters. He expressed an intention to contribute $25 a month to the support of each younger child. About two years prior to Hopkins' death he had been variously employed by the Railroad as a freight trucker, car sealer, and yard switchman and brakeman. For a brief period he worked, on leave of absence from the Railroad, in his father's business as a trucker. Shortly after his parents' death, Hopkins resumed his employment with the Railroad. During the month of June he contributed over $25 to the support of one of his younger sisters and $20 toward the support of one of his younger brothers. Shortly thereafter he met his death. Hopkins had stated repeatedly that it was his intention to assist his minor brothers and sisters. In finding that the minor children were dependents within the meaning of the statute, the Supreme Court of Arizona said, "[T]he purpose of the statute * * is to provide for compensation by the wrongdoer to those who had a reasonable expectation of pecuniary benefit in the continuance of the life of the deceased, and * * * a condition of dependency may be inferred from a necessitous want on the part of the next of kin, with a recognition of that want on the part of the employee and his purpose to contribute substantially to relieve the need." See 207 P. at p. 70.

In Boston & Maine R. R. v. Coppellotti, 167 F.2d 201 (1 Cir., 1948), there was evidence that the employee contributed from $5 to $15 a week to the support of his sister and that the only other certain income that she had was a pension of $42 a month received by her husband; that one of her other sons also contributed to the support of her household at times. The Court held that this was sufficient to support a jury finding that she was a dependent within the statute.

After examining the foregoing authorities it is apparent, we think, that each case must be judged upon its individual merits and circumstances. The court below made a finding of fact that Clifford sent Ivor at least $50.00 a month toward his tuition at the University of Chicago and paid him $20.00 a month rent for a substantial period until approximately a month prior to his death, Clifford's last remittance to Ivor being in September 1959. As a matter of fact the record shows that Clifford also remitted to Ivor $20.00 in October 1959. The court below also found that Ivor was gainfully employed and was not dependent on Clifford for support, maintenance, care, or otherwise. It does appear from the record that Ivor's gross salary for 1957 until just before the time of the accident, viz., until October 13, 1959, approximated $390 a month. Thereafter Ivor had temporary employment, at least until the date of the trial. There is also evidence that Ivor was in comparatively bad health and that he had a wife and two children to support but we cannot say that there is sufficient evidence to support a conclusion that his, Ivor's monthly earnings were insufficient to meet his or his family's needs. Dependency, of course, must be determined as of the time of Clifford's death. See Wade v. Rogala, supra, 270 F.2d at p. 286, and Southern Railroad Co. v. Vessell, supra, 68 So. at p. 338.

Under the circumstances, since dependency or partial dependency arises from an actual condition of financial need, and that condition has not been shown, we cannot say that the court below was clearly erroneous in its findings of fact or that its conclusion of law that Ivor was not a dependent next of kin of Clifford is wrong.

In view of our conclusion on this point it is unnecessary to determine whether or

**612**

not a claim arises under the Federal Employers' Liability Act or under the Safety Appliance Act.

The judgment of the court below will be affirmed.